IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIM MUNIZ,<br><br>          Plaintiff,<br><br>     v.<br><br>UNITED PARCEL SERVICE, INC.,<br><br>          Defendant.<br>_____/ | No. C 09-01987 CW<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Docket Nos. 23 and 27) |

     Plaintiff Kim Muniz charges Defendant United Parcel Service, Inc. (UPS) with unlawful discrimination, retaliation and negligent hiring, training and supervision.  She moves for leave to file an amended complaint.  UPS opposes her motion and moves for summary judgment on her claims.  Plaintiff opposes UPS's motion as to all her claims, except that for age discrimination.  Plaintiff's motion was taken under submission on the papers; UPS's motion was heard on June 3, 2010.  Having considered oral argument and the papers submitted by the parties, the Court DENIES Plaintiff's motion for leave to amend her complaint and GRANTS in part UPS's motion for summary judgment and DENIES it in part.

                              BACKGROUND

     Plaintiff has been an employee of UPS since 1978.  In May, 2006, Tom Dalton, East Bay District Manager, promoted Plaintiff to Oakland Division Manager.[1]  As division manager, Plaintiff was

---

     [1] Organizationally, UPS is divided into Regions, which are
                                        (continued...)

United States District Court<br>For the Northern District of California

responsible for all of the activities in the Oakland Division, including holding employees accountable and ensuring compliance with legal requirements.

In October, 2006, Plaintiff suspected that UPS supervisors were falsifying employees' timecards to cover up violations of federal and state wage-and-hour laws.  In particular, Plaintiff believed that supervisors were altering records to show that employees had taken meal breaks, even though they had not, and that employees started work earlier or later than they actually did. She communicated her concerns to East Bay District Operations Manager Sal Mignano.  An audit of the timecards was ordered. Thereafter, Plaintiff and Mignano warned supervisors that they could be disciplined if the conduct continued.

In January, 2007, Plaintiff believed that the unlawful alterations were still occurring.  She raised her continuing concerns with Ron Meyer, who had replaced Mignano as East Bay District Operations Manager.  Because she did not believe that Meyer would take action, Plaintiff independently asked the relevant department to conduct another audit of employees' timecards.

In February, 2007, Plaintiff obtained preliminary results of the audit, which showed that "a lot of changes" had been made to timecards.  Muniz Decl., Ex. G.  She again raised the subject with Meyer.  According to Plaintiff, Meyer became upset with her, continued to refuse to take any action and rejected her request to review the final results of the audit.  Plaintiff contends that,

_____

[1](...continued)
subdivided into Districts.  Districts are then split into Divisions, which are comprised of Centers.

United States District Court
For the Northern District of California

within a day or two of speaking to Meyer about the audit, they had a meeting in which he criticized her job performance.

In March, 2007, Jerry Mattes, Pacific Region Manager, transferred Plaintiff to the San Bruno Division of the Northern California District.  In turn, Mattes moved Tristan Christensen, the San Bruno Division Manager, to the Oakland Division.  Mattes made the change because he believed that Plaintiff, as a new division manager, "was already being perceived as not doing well in the district she was in" and therefore needed a "new start" in a neighboring district.  Hirsh Decl., Ex. B, Mattes Depo. 36:3-10.  Mattes also believed that Christensen could improve the performance of the Oakland Division.

Plaintiff spoke with Mary Gill, Northern California District Manager, about her transfer.  According to Plaintiff, Gill stated that her transfer was based on her poor performance.  Jaffe Decl., Ex. A, Muniz Depo. 38:6-8.  Plaintiff maintains that this was the first time that she had received a negative evaluation.  Gill directed Plaintiff to contact Meyer for additional information.  Plaintiff did so and she reports that, in a one-on-one meeting, Meyer praised her leadership, but noted that she produced "poor results."[2]  Jaffe Decl., Ex. A, Muniz Depo. 41:15.

Also, in or around March, 2007, Plaintiff learned that she received only a one-percent raise in her salary; she claims that, in previous years, she received three-percent increases.  Plaintiff states that Gill told her that Meyer made the decision concerning

_____

[2] As used here and below, "results" refers to an organizational unit's quantitative measures of productivity and efficiency.

3

her raise.

Plaintiff served as San Bruno Division Manager from March, 2007 to August, 2007.  In this role, she reported to Gill and Waring Lester, Northern California District Operations Manager.  On June 29, 2007, Gill and Lester met with Plaintiff to express their concerns that the San Bruno Division's results were "trend[ing] in the wrong direction."  Lester Decl., Ex. A; Hirsh Decl., Ex. A, Muniz Depo. 189:6-9.  Plaintiff believed that the San Bruno Division was already performing poorly before her arrival and that she was being blamed for a decline from artificially inflated benchmark statistics.  She also thought that staff shortages were having an adverse effect on the San Bruno Division's performance.

On August 24, 2007, Lester and District Human Resources Manager Brian Davis followed up with Plaintiff about the San Bruno Division's continued poor performance.  Lester and Davis expressed concerns that Plaintiff could not hold her employees accountable.  On August 30, 2007, Gill and Lester met with Plaintiff.  Gill indicated to Plaintiff that the San Bruno Division's results "had worsened under her leadership and that they were worse than the year prior."  Gill Decl. ¶ 12.  To "give her an opportunity to demonstrate performance improvement," Gill transferred Plaintiff to the North Division of the Northern California District.  Gill Decl. ¶ 13; Hirsh Decl., Ex. A, Muniz Depo. 203:15-20.  Joseph Woulfe replaced Plaintiff as San Bruno Division Manager.  He states that, upon taking over, he discovered that the San Bruno Division was operating under a "substantial shortage of personnel."  Woulfe Decl. ¶ 4.

On January 21, 2008, Gill and Meyer, who had recently replaced

4

Lester as Northern California District Operations Manager, met with Plaintiff about her performance in the North Division. According to Gill's notes, they discussed continuing concerns over Plaintiff's leadership abilities, her inability to hold people accountable and "Ron Meyer's issue with her lack of communication and follow up." Gill Decl., Ex. A at 2539.

Gill's notes from other meetings reflect ongoing concerns regarding Plaintiff's job performance. At a February, 2008 meeting, Gill, Meyer and Plaintiff discussed the North Division's results and how they could be improved. In March, 2008, Gill, Meyer and Plaintiff revisited the North Division's results and identified additional areas for improvement. They also addressed Plaintiff's inadequate response to an injury at the San Rafael Center. Gill Decl., Ex. A at 2539.

In April, 2008, Gill did not recommend Plaintiff for a stock bonus award because Plaintiff's "leadership, accountability and follow-through were below what UPS requires of its Division Managers." Gill Decl. ¶ 21. According to Plaintiff, she was told that she did not receive the bonus because she lacked "soft skills," which Meyer explained to mean that she "didn't think like he did." Jaffe Decl., Ex. A, Muniz Depo. 167:13-14.

Also in April, 2008, Gill decided, after consultation with Meyer, to place Plaintiff on a Manager Performance Improvement Plan (MPIP). The MPIP set out six performance goals, based on quantitative measures, that Plaintiff had to achieve over the course of three months. The MPIP also stated that Plaintiff needed to "show more business leadership in her division." Meyer Decl., Ex. A. Gill and Meyer worked together to develop the MPIP, which

5

United States District Court
For the Northern District of California

Davis approved.  On April 17, 2008, Meyer informed Plaintiff of the terms of her MPIP and explained that her failure to improve by July, 2008 could result in a loss of employment or demotion to a supervisor position.  Plaintiff believed that the MPIP set unfairly high standards and that she was "being set up to fail."  Muniz Decl. ¶ 36.  In particular, she noted that the MPIP set a "missed-on-road goal of 1 in 2,000," even though the standard for other Northern California Division Managers was 1 in 1,500.  Muniz Decl. ¶ 33.

In May, 2008, Gill and Meyer reviewed Plaintiff's career development plan, on which Gill indicated that Plaintiff's overall performance was unsatisfactory.  Gill states that, although Meyer provided feedback, the document reflects her "own independent and personal observation of Ms. Muniz's performance."  Gill Decl. ¶ 23.

On June 12, 2008, Plaintiff met with Pacific Region Human Resources Manager Mary Sue Allen to express her concerns about her MPIP.  At the meeting, Allen reviewed with Plaintiff the goals of the MPIP and discussed how Plaintiff could improve her performance. At around the same time, Plaintiff spoke to Gwendolyn Lusk, a human resources employee, who indicated that the MPIP process had not been followed.  According to Lusk, MPIP goals were to be developed in consultation with the subject employee and not imposed by supervisors.

During the MPIP period, Gill and Meyer met with Plaintiff on several occasions.  Gill's notes from these meetings reflect that they discussed Plaintiff's continued poor performance.  Also, in June and July, 2008, Gill and Meyer made several visits to the Petaluma Center and observed deficiencies in its operations and in

6

**United States District Court**
For the Northern District of California

Plaintiff's leadership.  In particular, Gill opined that Plaintiff "made absolutely no effort to engage in" a conversation with an employee regarding expectations and that, with a manager, she "made no attempt to coach or offer suggestions on how to over come the issues they encountered the previous day."  Gill Decl., Ex. E at UPS2678-UPS2679.

However, from January, 2008 to July, 2008, Plaintiff received several letters from Tony Colaizzo, Pacific Region Operations Manager, recognizing her for the North Division's positive results. A March, 2008 report shows that, based on its results, the North Division ranked fifteenth out of the forty-seven divisions in the Pacific Region; within the Northern California District that month, the North Division ranked second.  <u>See</u> Muniz Decl., Ex. Q.[3]  In April, 2008, she received an award from Gill and Meyer for "Division Manager of the Quarter" for First Quarter 2008.  Muniz Decl., Ex. S.

Nonetheless, Plaintiff did not meet all of the goals set forth by the MPIP.  After consulting with Meyer, Davis, Allen and legal counsel, Gill decided to offer Plaintiff three options: "demotion two levels to a supervisor position; demotion one level to a manager position, with an agreement to continue paying Ms. Muniz at the Division Manager salary level in exchange for a release agreement; or resignation of employment with severance pay and a release agreement."  Gill Decl. ¶ 25.  Accompanied by Meyer and

---

[3] In her declaration, Plaintiff states that the North Division "placed 22nd out of 52 divisions in the Pacific Region."  Muniz Decl. ¶ 29.  This appears to be in error.  The chart to which she cites lists forty-seven divisions and states that the North Division ranked fifteenth.  Muniz Decl., Ex. Q.

Davis, Gill notified Plaintiff of her options on August 29, 2008 and gave her twenty-one days to respond.  Because Plaintiff did not respond timely, Gill decided, after consulting with Davis, Allen and legal counsel, to demote Plaintiff to a supervisor position.

On March 30, 2009, Plaintiff filed a complaint with the California Department of Fair Employment and Housing (DFEH), alleging a demotion based on gender, age and retaliation for engaging in protected activity.

Plaintiff filed this action on April 6, 2009.  She brings four causes of action against UPS: (1) gender discrimination, in violation of the California Fair Employment and Housing Act (FEHA); (2) unfair retaliation, in violation of FEHA; (3) age discrimination, in violation of FEHA; and (4) negligent hiring, training and supervision.

Pursuant to the Court's Case Management Scheduling Order, the deadline to add additional claims was August 18, 2009.  (Docket No. 19.)  Fact discovery closed on April 2, 2010.  On April 5, 2010, Plaintiff filed a motion for leave to amend her complaint.  She seeks leave to add three claims: (1) "Whistleblower Retaliation," in violation of California Labor Code section 1102.5(c); (2) "Labor Code Retaliation," in violation of California Labor Code section 98.6; and (3) "Wrongful Employment Practices in Violation of Public Policy," which is often referred to as a Tameny claim, after the decision in Tameny v. Atlantic Richfield Co., 27 Cal. 3d 167, 176-177 (1980).  For her Tameny claim, Plaintiff pleads that UPS contravened public policy through its alleged violations of FEHA and Labor Code sections 98.6 and 1102.5(c).

United States District Court
For the Northern District of California

DISCUSSION

I.    Plaintiff's Motion for Leave to File an Amended Complaint

Plaintiff's motion for leave to file an amended complaint with new claims was filed after the deadline to add claims passed. Thus, she must justify both amending her pleading and failing to comply with the Court's case management scheduling order.

The Supreme Court has identified four factors relevant to whether a motion under Federal Rule of Civil Procedure 15 for leave to amend should be denied: undue delay, bad faith or dilatory motive, futility of amendment and prejudice to the opposing party. Foman v. Davis, 371 U.S. 178, 182 (1962). Futility, on its own, can warrant denying leave to amend. Bonin v. Calderon, 59 F.3d 815, 845 (9th Cir. 1995).

A scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Where a schedule has been ordered, a party's right to amend its pleading is governed by this good cause standard, not the more liberal standard of Rule 15(a)(2). Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 608 (9th Cir. 1992). In order to determine whether good cause exists, courts primarily consider the diligence of the party seeking the modification. Id. at 609; see also Coleman v. Quaker Oats Co., 232 F.3d 1271, 1294 (9th Cir. 2000). "[N]ot only must parties participate from the outset in creating a workable Rule 16 scheduling order but they must also diligently attempt to adhere to that schedule throughout the subsequent course of the litigation." Jackson v. Laureate, Inc., 186 F.R.D. 605, 607 (E.D. Cal. 1999).

Plaintiff seeks leave to add claims under Labor Code sections 98.6 and 1102.5(c) and a Tameny claim based on the Labor Code

violations and FEHA.  Plaintiff fails to demonstrate good cause to modify the scheduling order to allow amendment of her complaint.

Plaintiff asserts that, over the course of litigation, she "became aware that the facts of her case supported additional causes of action not previously alleged."  Mot. at 3.  She explicitly states that her proposed claims are not based on new facts obtained through discovery, but rather arise from her realization that her allegations support other legal theories. However, the demand letter she sent to UPS in October, 2008, six months before she filed her complaint in April, 2009, indicates that she knew that she could assert retaliation claims under the Labor Code, but apparently chose not to plead them in her complaint.  Instead, she waited over a year to attempt to assert her new claims, which demonstrates a lack of diligence.  Because Plaintiff was not diligent in adding her proposed claims, amending the scheduling order is not warranted.

Plaintiff asserts that UPS will not be prejudiced by her amendments because, although discovery is closed, her new claims, based on her existing allegations, will not require additional discovery.  This is not necessarily true.  UPS is entitled to take discovery on "any nonprivileged matter that is relevant to any party's claim . . . ."  Fed. R. Civ. P. 26(b)(1).  Notwithstanding Plaintiff's assertion, adding new claims could require a second round of discovery.  Reopening discovery and delaying proceedings would prejudice UPS, which also weighs against granting Plaintiff leave to amend.  See Coleman, 232 F.3d at 1295.

Moreover, as explained below, her proposed retaliation claims would be futile because they fail as a matter of law.  Accordingly,

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

the Court denies Plaintiff's motion for leave to file an amended complaint.

II.   UPS's Motion for Summary Judgment

    A.   Legal Standard

    Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law.  Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987).

    The moving party bears the burden of showing that there is no material factual dispute.  Therefore, the court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material.  Celotex, 477 U.S. at 324; Eisenberg, 815 F.2d at 1289.  The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).

    Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case.  The substantive law will identify which facts are material.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

    Where the moving party does not bear the burden of proof on an issue at trial, the moving party may discharge its burden of production by either of two methods:

11

United States District Court
For the Northern District of California

> The moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial.

Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Cos., Inc., 210 F.3d 1099, 1106 (9th Cir. 2000).

If the moving party discharges its burden by showing an absence of evidence to support an essential element of a claim or defense, it is not required to produce evidence showing the absence of a material fact on such issues, or to support its motion with evidence negating the non-moving party's claim.  Id.; see also Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 885 (1990); Bhan v. NME Hosps., Inc., 929 F.2d 1404, 1409 (9th Cir. 1991).  If the moving party shows an absence of evidence to support the non-moving party's case, the burden then shifts to the non-moving party to produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists."  Bhan, 929 F.2d at 1409.

If the moving party discharges its burden by negating an essential element of the non-moving party's claim or defense, it must produce affirmative evidence of such negation.  Nissan, 210 F.3d at 1105.  If the moving party produces such evidence, the burden then shifts to the non-moving party to produce specific evidence to show that a dispute of material fact exists.  Id.

If the moving party does not meet its initial burden of production by either method, the non-moving party is under no obligation to offer any evidence in support of its opposition.  Id. This is true even though the non-moving party bears the ultimate

12

1   burden of persuasion at trial.  <u>Id.</u> at 1107.

2        B.   Retaliation Claims

3        UPS asserts that it is entitled to summary judgment on

4   Plaintiff's FEHA retaliation claim because she did not engage in

5   protected activity under FEHA and there is no triable issue on

6   retaliatory causation.  At the hearing on UPS's motion, Plaintiff

7   conceded that she cannot maintain a FEHA retaliation claim.

8   However, she asserts that, if she were granted leave to file an

9   amended complaint, she would demonstrate a genuine issue of

10  material fact concerning her proposed claims for retaliation in

11  violation of California Labor Code sections 98.6 and 1102.5(c) and

12  wrongful employment practices in violation of public policy.  As

13  mentioned above, adding these claims for retaliation would be

14  futile.

15       "To establish a prima facie case of retaliation 'a plaintiff

16  must show (1) she engaged in a protected activity, (2) her employer

17  subjected her to an adverse employment action, and (3) there is a

18  causal link between the two.'"  <u>Mokler v. County of Orange</u>, 157

19  Cal. App. 4th 121, 138 (2007) (quoting <u>Patten v. Grant Joint Union</u>

20  <u>High Sch. Dist.</u>, 134 Cal. App. 4th 1378, 1384 (2005)).  Protected

21  activity that would support a Labor Code violation includes "the

22  exercise by the employee . . . on behalf of himself, herself, or

23  others of any rights afforded him or her" under the Labor Code.

24  Cal. Lab. Code § 98.6.  Protected activity also encompasses

25  "refusing to participate in an activity that would result in a

26  violation of state or federal statute, or a violation or

27  noncompliance with a state or federal rule or regulation."  <u>Id.</u>

28  § 1102.5(c).

1    Plaintiff's theory appears to be that, by internally reporting

2    allegedly illegal conduct, she exercised her right to be protected

3    as a whistleblower and "refused to acquiesce" in Defendant's

4    violation of state and federal wage-and-hour laws.  Opp'n at 11.

5    UPS contends this is not protected activity because reporting such

6    violations was a part of Plaintiff's job responsibilities.  First,

7    UPS cites <u>Garcetti v. Ceballos</u>, in which the United States Supreme

8    Court held that a public employee's memo was not protected speech

9    under the First Amendment because he wrote it pursuant to his

10   official duties.  547 U.S. 410, 421-22 (2006).  However, UPS fails

11   to offer controlling authority that applies <u>Garcetti</u> to claims for

12   retaliation under the California Labor Code against private

13   employers.[4]  UPS also cites <u>McKenzie v. Renberg's Inc.</u>, which

14   addressed unlawful retaliation under the Fair Labor Standards Act

15   (FLSA), 29 U.S.C. § 215(a)(3).[5]  94 F.3d 1478, 1481 (10th Cir.

16   1996).  The Tenth Circuit held that the employee's conduct was not

17   protected activity because she was "merely performing her everyday

18   duties as personnel director for the company;" she did not take

19   "some action adverse to the company," which the court explained to

20   be "the hallmark of protected activity under § 215(a)(3)."  <u>Id.</u> at

21   1486.  Although <u>McKenzie</u> involved retaliation in violation of the

22

23        [4] UPS argues that it cites cases to show that "courts after
     <u>Garcetti</u> have applied its teachings in a broad variety of
24   contexts."  Reply at 6 n.11.  However, the cited cases predate
     <u>Garcetti</u> and none of them applies California law.
25
          [5] Section 215(a)(3) provides that it is unlawful "to discharge
26   or in any other manner discriminate against any employee because
     such employee has filed any complaint or instituted or caused to be
27   instituted any proceeding under or related to this chapter, or has
     testified or is about to testify in any such proceeding, or has
28   served or is about to serve on an industry committee."

United States District Court
For the Northern District of California

FLSA, Plaintiff's claim under section 98.6 is analogous to a claim under 29 U.S.C. § 215(a)(3); both Plaintiff and the McKenzie plaintiff raised concerns about "possible wage and hour violations." McKenzie, 94 F.3d at 1485. And, because Plaintiff testified that reporting such violations were a part of her job duties, McKenzie teaches that she cannot sustain her claim under section 98.6 for unlawful retaliation. But Plaintiff's alternative theory is that she refused to accede to an alleged practice of masking wage-and-hour violations, which a jury could construe as a position adverse to UPS. See Frazier v. United Parcel Service, 2005 WL 1335245, at *12 (E.D. Cal.). Thus, while McKenzie is persuasive, it does not preclude Plaintiff's claim under section 98.6.

However, Plaintiff fails to establish a causal link between her alleged protected activity and any actionable adverse employment action. Plaintiff complained about the timecard anomalies in early 2007 and her demotion occurred in September, 2008. Her demotion was not close enough in time to her alleged protected activity to give rise to an inference of retaliatory causation. See, e.g., Manatt v. Bank of Am., NA, 339 F.3d 792, 802 (9th Cir. 2003) (explaining that lapse of nine months defeated inference of retaliatory causation); see also Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001) (stating that temporal proximity between protected activity and adverse action must be "very close" to support inference of causation).

Plaintiff nevertheless contends that Meyer, in retaliation for her protected activity in early 2007, orchestrated a chain of events that culminated in her demotion in September, 2008 and that

15

United States District Court
For the Northern District of California

this should be considered a "pattern of systematic retaliation."[6]
Opp'n at 15. However, she fails to account for the approximately
ten-month gap between March, 2007 and January, 2008, during which
Meyer did not have a supervisory role over Plaintiff. Plaintiff
points to evidence that Meyer may have had a role in her transfer
to the San Bruno Division and in the decision to give her only a
one-percent raise for 2007.[7] Even if both of these were considered
adverse employment actions, Meyer's next allegedly retaliatory act
was influencing Gill's decision to deny Plaintiff a stock bonus.
This occurred in April, 2008, over a year after Plaintiff's
transfer to San Bruno and approximately fifteen months after she
investigated the timecards. Plaintiff offers no evidence that
Meyer influenced any conduct or evaluation by Gill, Davis or Lester
in the ten-month period during which he did not supervise her. Nor
does Plaintiff offer direct evidence that any retaliatory animus on
Meyer's part caused the adverse actions taken against her in 2008.
Thus, Plaintiff fails to support her claim that she faced a
"campaign of retaliation" led by Meyer. Opp'n at 16.

Plaintiff fails to create a triable issue concerning
retaliatory causation. The Court grants summary judgment against
Plaintiff on her FEHA retaliation claim and finds that it would be

---

[6] Plaintiff does not cite evidence that any UPS employee other
than Meyer harbored retaliatory animus against her. She appears to
claim that Meyer was the "primary engine behind" the alleged
retaliation. Opp'n at 15.

[7] Plaintiff cannot maintain retaliation claims based on these
two actions alone because they fall outside the relevant one-year
statute of limitations. See Cal. Civ. Proc. Code § 340(a), (c);
Barton v. New Motor United Mfg., Inc., 43 Cal. App. 3d 1200, 1209
(1996) (applying one-year statute of limitations to Tameny claims);
Fenters v. Yosemite Chevron, 2009 WL 4928362, at *7 (E.D. Cal.);
Attinello v. City of Pleasanton, 1998 WL 305510, at *5 (N.D. Cal.).

United States District Court
For the Northern District of California

futile for her to amend her complaint to add her proposed causes of action under Labor Code sections 98.6 and 1102.5(c) and her <u>Tameny</u> claim, to the extent it is based on Labor Code retaliation.

C.   Discrimination Claims

In her complaint, Plaintiff alleges that she was subjected to disparate treatment on the basis of her gender and age.  However, Plaintiff states in her opposition that she "withdraws" her claim of age discrimination.  Opp'n at 10 n.7.  Accordingly, the Court enters summary judgment against Plaintiff on her age discrimination claim.

With regard to her gender discrimination claim, UPS asserts that Plaintiff cannot establish a <u>prima facie</u> case and that there is no triable issue of pretext.

1.   Applicable Law

In disparate treatment cases, plaintiffs can prove intentional discrimination through direct or indirect evidence.  "Direct evidence is evidence which, if believed, proves the fact of discriminatory animus without inference or presumption." <u>Godwin v. Hunt Wesson, Inc.</u>, 150 F.3d 1217, 1221 (9th Cir. 1998) (citation and internal quotation and editing marks omitted).

Because direct proof of intentional discrimination is rare, such claims may be proved circumstantially. <u>Guz v. Bechtel Nat'l, Inc.</u>, 24 Cal. 4th 317, 354 (2000).  To do so, plaintiffs must satisfy the burden-shifting analysis set out by the Supreme Court in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973), and <u>Texas Dept. of Community Affairs v. Burdine</u>, 450 U.S. 248 (1981). <u>Guz</u>, 24 Cal. 4th at 354.  The <u>McDonnell Douglas</u> burden-shifting framework is used when analyzing claims under FEHA. <u>Id.</u>

United States District Court
For the Northern District of California

Within this framework, plaintiffs may establish a <u>prima facie</u> case of discrimination by reference to circumstantial evidence. <u>Id.</u> at 355.  To do so, plaintiffs must show that they are members of a protected class; that they were performing competently in the position held; that they were subjected to an adverse employment decision; and that the circumstances of the decision raised an inference of discrimination.  <u>Id.</u>; <u>see also</u> <u>St. Mary's Honor Center v. Hicks</u>, 509 U.S. 502, 506 (1993) (citing <u>McDonnell Douglas</u> and <u>Burdine</u>).

The Ninth Circuit has instructed that district courts must be cautious in granting summary judgment for employers on discrimination claims.  <u>See</u> <u>Lam v. Univ. of Hawai'i</u>, 40 F.3d 1551, 1564 (9th Cir. 1994) ("'We require very little evidence to survive summary judgment' in a discrimination case, 'because the ultimate question is one that can only be resolved through a "searching inquiry" -- one that is most appropriately conducted by the factfinder.'") (quoting <u>Sischo-Nownejad v. Merced Cmty. Coll. Dist.</u>, 934 F.2d 1104, 1111 (9th Cir. 1991)).

> 2.   <u>Prima Facie</u> Case

UPS does not dispute that Plaintiff is a member of a protected class based on her gender and that her demotion to a supervisor position constituted an adverse employment action.

To show she competently performed her job, Plaintiff proffers the recognition she received between January, 2008 and July, 2008. As noted above, in letters from this time period, the Pacific Region Operations Manager praised Plaintiff for her leadership and for the North Division's results in particular categories.  Also, in March, 2008, the North Division's results placed it in the top

**United States District Court**
For the Northern District of California

third of all divisions within the Pacific Region and ranked it
second in the Northern California District.  In April, 2008,
Plaintiff received an award from Gill and Meyer for "Division
Manager of the Quarter."

UPS contends that all of this evidence is irrelevant because
the recognition is based on the performance of the North Division,
which UPS asserts was a historically high-performing unit.  Thus,
UPS argues, the comparably high results are not attributable to
Plaintiff, let alone her leadership ability.

Although Plaintiff's statistics, like many quantitative
measures, are susceptible to multiple interpretations, a jury could
infer that she led the North Division to these successes.  Indeed,
the fact that much of the recognition Plaintiff received came
several months after she transferred to the North Division
undermines UPS's assertion that the results are attributable solely
to the Division's historical performance.  Also, certain reports
appear to contradict UPS's assertion and suggest that the North
Division's results improved somewhat under Plaintiff's tenure.
From May, 2007 through July, 2007, the North Division ranked no
higher than third out of five divisions with respect to an overall
measure of its results.  Muniz Decl., Ex. K.  However, on at least
four occasions while Plaintiff was the North Division's manager, it
ranked second among the five.[8]  Muniz Decl., Ex. M.  Gill's notes
show that she considered the North Division's results when

---

[8] Notably, Plaintiff offers only the North Division's results
from four weeks in four separate months.  This mitigates the
probative value of her showing.  However, UPS does not offer
rebuttal statistical evidence that the other weeks were materially
worse.

evaluating Plaintiff's managerial skills, suggesting that these results were more relevant than UPS now represents them to be.  <u>See</u> Gill Decl., Ex. A at 2539-40.  Plaintiff therefore satisfies this element of her <u>prima facie</u> case.

To raise an inference that her demotion was impermissibly based on her gender, Plaintiff asserts that Meyer harbored discriminatory intent and that he influenced Gill, the ultimate decision-maker in Plaintiff's demotion.[9]  To prevail on such a theory, Plaintiff must prove both that Meyer harbored discriminatory intent and that he "contributed materially" to Gill's decision to demote her.  <u>Reeves v. Safeway Stores</u>, 121 Cal. App. 4th 95, 109 (2004); <u>see also</u> <u>Poland v. Chertoff</u>, 494 F.3d 1174, 1182 (9th Cir. 2007) (stating that an allegedly independent adverse employment decision can be tainted "if the plaintiff can prove that . . . the biased subordinate influenced or was involved in the decision or decisionmaking process"); <u>Galdamez v. Potter</u>, 415 F.3d 1015, 1026 n.9 (9th Cir. 2005) ("Title VII may still be violated where the ultimate decision-maker, lacking individual discriminatory intent, takes an adverse employment action in reliance on factors affected by another decision-maker's

---

[9] Plaintiff also claims that UPS has a "culture in which female employees were subjected to widespread discrimination from male supervisors."  Opp'n at 20.  In support, however, Plaintiff does not cite sufficient evidence of a pattern or practice of discrimination.  She proffers testimony of employees who believed that such an environment existed.  <u>See, e.g.</u>, Jaffe Decl., Ex. E, Camicia Depo. 78:21-25 (stating that there is "a different set of standards for women than it is for men"); Jaffe Decl., Ex. J, Janders Depo., 88:18-22.  However, this testimony does not specifically describe instances of gender discrimination, but rather reflects speculation that such discrimination occurred.  Assertions that UPS has a culture of gender discrimination, unsupported by factual evidence, are not sufficient to create a triable issue.  <u>See</u> <u>Steckl</u>, 703 F.3d at 393.

**United States District Court**
For the Northern District of California

1  discriminatory animus."). Plaintiff adduces sufficient evidence of

2  both.

3      Plaintiff proffers testimony that Meyer treated women more

4  harshly than men. <u>See, e.g.</u>, Jaffe Decl., Ex. E, Camicia Depo.

5  43:23-44:16 (stating that Meyer directed pointed and "over-the-top"

6  questions to women, but not to men); Jaffe Decl., Ex. C, Seymour

7  Depo. 67:14-69:4 (describing Meyer's "disrespectful" conversation

8  with female division manager and stating that she had not observed

9  Meyer treat men similarly); Jaffe Decl., Ex. K, Davis Depo. 86:13-

10  87:11 (discussing complaint to human resources manager about

11  Meyer's mistreatment of female division manager); Woulfe Decl. ¶ 6

12  (personally observing that Meyer is "short, curt and sarcastic"

13  with female employees and "does not treat male employees in the

14  same manner in which he treats female employees"). Plaintiff also

15  states that, in February, 2008, she heard Meyer say that "they

16  needed a strong man" to manage sorting operations.[10] Jaffe Decl.,

17  Ex. A, Muniz Depo. 91:5-20.

18      In response, UPS points to evidence that Meyer treats male

19  employees poorly as well. Although this may be true, it does not

20  preclude a jury from finding that Meyer treated women differently

21  than men. <u>Cf. Cornwell v. Electra Cent. Credit Union</u>, 439 F.3d

22  1018, 1032 (9th Cir. 2006) (noting that, although a jury may

23  attribute "lack of interaction" to defendant's "brusque management

24  style," it could also infer that defendant's exclusion of plaintiff

25  ─────────────────

26      [10] UPS is correct that some California courts reject "stray" remarks as proof of discrimination. <u>See, e.g.</u>, <u>Gibbs v. Consol.</u>

27  <u>Svcs.</u>, 111 Cal. App. 4th 794, 801 (2003). Plaintiff, however, does not rely solely on this remark as evidence of discrimination, but

28  rather offers it along with other evidence that Meyer may harbor bias. <u>See Boeing</u>, 577 F.3d at 1050.

1   from meetings had "discriminatory purposes").

2       There is also sufficient evidence to suggest that Meyer

3   contributed materially to Gill's demotion decision.  Gill consulted

4   with Meyer, among others, prior to demoting Plaintiff.  Further,

5   Gill worked with Meyer in developing Plaintiff's MPIP, which served

6   as a basis for Plaintiff's demotion.  Gill acknowledges that Meyer

7   assisted in the review of Plaintiff's career development plan, on

8   which Gill gave Plaintiff an "unsatisfactory" rating.  Also, Meyer

9   was present at and participated in several meetings between

10  January, 2008 and June, 2008, during which Plaintiff was informed

11  of her poor performance and counseled on her deficiencies.

12      UPS argues that Horn v. Cushman & Wakefield Western, Inc., 72

13  Cal. App. 4th 798 (1999), teaches that this evidence is irrelevant.

14  However, Horn is distinguishable.  There, the court rejected the

15  plaintiff's assertion that the "actual force behind his

16  termination" was Barbara Van Allen, an indirect supervisor, not

17  John Renard, his direct supervisor.  Id. at 808.  Renard had

18  testified that he made the decision to terminate the plaintiff's

19  employment.  Id.  To argue that Van Allen was the ultimate

20  decision-maker, the plaintiff pointed to evidence that Renard had

21  discussions with Van Allen about him "60 to 90 days before" he was

22  terminated.  Id.  Based on this evidence, the court described the

23  plaintiff's assertions about Van Allen as "entirely speculative."

24  Id.  Here, evidence suggests that Meyer played a more active role

25  in the evaluation of Plaintiff and the decision-making process that

26  led to her demotion.

27      Construing the evidence in favor of Plaintiff, a jury could

28  infer that Meyer had discriminatory animus and contributed

United States District Court
For the Northern District of California

22

materially to Gill's demotion decision.  Plaintiff therefore
demonstrates a <u>prima facie</u> case, shifting the burden to UPS to
offer evidence of a non-discriminatory basis for Plaintiff's
demotion.

>           3.    Non-Discriminatory Basis

Once plaintiffs establish a <u>prima facie</u> case, a presumption of
discriminatory intent arises.  <u>Guz</u>, 24 Cal. 4th at 355.  To
overcome this presumption, defendants must come forward with a
legitimate, non-discriminatory reason for the employment decision.
<u>Id.</u> at 355-56.  If defendants provide that explanation, the
presumption disappears and plaintiffs must satisfy their ultimate
burden of persuasion that defendants acted with discriminatory
intent.  <u>Id.</u> at 356.

UPS adduces evidence that Plaintiff was demoted because "she
was not meeting UPS's performance expectations with respect to
leadership qualities, business acumen, and other managerial skills
at the division manager level."  Gill Decl. ¶ 27.  As discussed
above, Gill's notes reflect what were believed to be inadequacies
in Plaintiff's job performance.  Further, UPS points to Plaintiff's
failure to meet the terms of the MPIP.  Plaintiff acknowledges that
she satisfied the MPIP's elements only "on occasion, but not
consistently."  Hirsh Decl., Ex. A, Muniz Depo. 229:16-19.

UPS articulates and supports with evidence its non-
discriminatory bases for Plaintiff's demotion.

>           4.    Pretext

Because UPS provides evidence of legitimate reasons for her
demotion, Plaintiff must create a triable issue on whether UPS's
reasons were merely a pretext for discrimination.  To do so,

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

plaintiffs may rely on the same evidence used to establish a prima facie case.  See Coleman, 232 F.3d at 1282; Wallis v. J.R. Simplot Co., 26 F.3d 885, 892 (9th Cir. 1994).  However, "in those cases where the prima facie case consists of no more than the minimum necessary to create a presumption of discrimination under McDonnell Douglas, plaintiff has failed to raise a triable issue of fact." Wallis, 26 F.3d at 890.

Plaintiffs can provide additional evidence of "pretext (1) indirectly, by showing that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer." Raad v. Fairbanks N. Star Borough Sch. Dist., 323 F.3d 1185, 1194 (9th Cir. 2003) (citation and internal quotation marks omitted).  When plaintiffs present indirect evidence that the proffered explanation is a pretext for discrimination, "'that evidence must be specific and substantial to defeat the employer's motion for summary judgment.'"  EEOC v. Boeing Co., 577 F.3d 1044, 1049 (9th Cir. 2009) (quoting Coghlan v. Am. Seafoods Co. LLC, 413 F.3d 1090, 1095 (9th Cir. 2005)).  Evidence "of dishonest reasons, considered together with the elements of the prima facie case, may permit a finding of prohibited bias." Guz, 24 Cal. 4th at 356.  However, "an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred." Reeves v. Sanderson

24

Plumbing Prods., Inc., 530 U.S. 133, 148 (2000); accord Guz, 24 Cal. 4th at 361-62.

When plaintiffs proffer direct evidence that the defendant's explanation is a pretext for discrimination, "very little evidence" is required to avoid summary judgment. Boeing, 577 F.3d at 1049.

Plaintiff contends that inconsistent evaluations of her leadership suggest that UPS's reasons for her demotion are unworthy of credence. As noted above, from January, 2008 through July, 2008, Plaintiff received letters of commendation and a "Division Manager of the Quarter" award; during the same period, however, Gill and Meyer opined that her leadership skills were inadequate. Based on this inconsistency, a jury could infer that the reasons given for Plaintiff's demotion were false. See Feliciano de la Cruz v. El Conquistador Resort & Country Club, 218 F.3d 1, 7 (1st Cir. 2000) ("It is also reasonable to infer that El Conquistador would not have sent Feliciano even generic commendations if it were truly dissatisfied with her job performance . . . .").

Also, as noted above, Plaintiff offers evidence that, while she was its manager, the North Division's results improved relative to those of the four other divisions comprising the Northern California District. Although UPS claims these statistics are irrelevant, the evidence suggests, as noted above, that Gill considered them when she evaluated Plaintiff's performance. Thus, a reasonable jury could infer that Plaintiff had a positive impact on the North Division's performance and, as a result, the proffered non-discriminatory reasons were pretextual.

Taken together, the evidence presented by Plaintiff creates a genuine dispute as to whether UPS's reasons for her demotion were a

1  pretext for gender discrimination.  See Johnson v. United Cerebral

2  Palsy/Spastic Children's Found. of L.A. & Ventura Counties, 173

3  Cal. App. 4th 740, 758 (2009) (stating that evidence, although

4  independently insufficient to create a triable issue, can be

5  aggregated to defeat summary judgment).  Accordingly, the Court

6  denies UPS's motion for summary judgment on Plaintiff's claim for

7  gender discrimination.

8       D.   Statute of Limitations

9       UPS argues that, under FEHA's statute of limitations, it

10  cannot be held liable for conduct occurring more than one year

11  before March 30, 2009, the date Plaintiff filed her administrative

12  complaint.

13      A plaintiff must exhaust administrative remedies under FEHA

14  before bringing a civil suit under the statute.  Rojo v. Kliger, 52

15  Cal. 3d 65, 84 (1990).  To satisfy this requirement, an aggrieved

16  party must file an administrative complaint with DFEH within "one

17  year from the date upon which the alleged unlawful practice . . .

18  occurred."  Cal. Gov't Code § 12960(d); see also Cucuzza v. City of

19  Santa Clara, 104 Cal. App. 4th 1031, 1041 (2002).  However, under

20  the continuing violation doctrine, an employer "is liable for

21  actions that take place outside the limitations period if these

22  actions are sufficiently linked to unlawful conduct that occurred

23  within the limitations period."  Yanowitz, 36 Cal. 4th at 1056

24  (citation omitted).  If a plaintiff establishes a continuing

25  violation, the "FEHA statute of limitations begins to run when an

26  alleged adverse employment action acquires some degree of

27  permanence or finality."  Id. at 1059.

28      As discussed above in connection with the retaliatory

causation issue, Plaintiff asserts that she faced a chain of
adverse employment actions, beginning with her transfer to the San
Bruno Division in March, 2007 and culminating with her demotion in
September, 2008.  Thus, she asserts, she suffered a continuing
violation, enabling her to seek liability for actions taken before
March 30, 2008.

Even assuming that each action of which she complains could be
described as "adverse," Plaintiff does not provide evidence that
Meyer influenced every decision in this chain.  Plaintiff adduces
some evidence that Meyer may have been responsible for her transfer
to the San Bruno Division and the purported decrease in the amount
of her annual raise, both of which occurred in March, 2007.
However, she offers no evidence that he precipitated any action
between then and the denial of her stock bonus in April, 2008.
Consequently, Plaintiff does not demonstrate a chain of
discriminatory acts that reaches back to March, 2007.

Accordingly, the Court summarily adjudicates that UPS can be
held liable only for events that took place after March 30, 2008.
To be clear, however, this does not preclude Plaintiff from
proffering evidence of conduct before this date that may be
probative of discriminatory animus.  See Lyons v. England, 307 F.3d
1092, 1109-12 (9th Cir. 2002).

E.   Claim for Negligent Hiring, Training and Supervision

UPS claims that Plaintiff's claim for negligent hiring,
training and supervision fails as a matter of law because it is

preempted by California's Workers' Compensation Act (WCA).[11]

Although the WCA preempts some causes of action, it does not preempt those "that implicate fundamental public policy considerations." <u>Maynard v. City of San Jose</u>, 37 F.3d 1396, 1405 (9th Cir. 1994). Plaintiff's negligence claim rests on facts supporting her claim for gender discrimination. Because such discrimination raises fundamental public policy considerations, the WCA does not preempt this cause of action. Accordingly, the Court denies UPS's motion as to this claim.

F.   Punitive Damages

In California, a plaintiff may seek punitive damages if, in an action not arising from a breach of contract, "it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." Cal. Civ. Code § 3294(a). A corporate employer may not be held liable for such damages arising from the acts of an employee unless "an officer, director, or managing agent of the corporation" "had advance knowledge of the unfitness of the employee and employed him or her with a conscious disregard of the rights or safety of others or authorized or ratified the wrongful conduct for which the damages are awarded or was personally guilty of oppression, fraud, or malice." <u>Id.</u> § 3294(b). Managing agents are "those corporate employees who exercise substantial independent authority and judgment in their corporate decisionmaking so that their decisions ultimately determine corporate policy." <u>White v. Ultramar, Inc.</u>, 21 Cal. 4th

---

[11] UPS also argues that this claim fails because Plaintiff does not state a claim for discrimination or retaliation. This argument is unavailing because Plaintiff substantiates her claim for gender discrimination.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

563, 567 (1999).  These are policies that "affect a substantial portion of the company and that are the type likely to come to the attention of corporate leadership."  <u>Roby v. McKesson Corp.</u>, 47 Cal. 4th 686, 714 (2009).  Whether employees exercise sufficient authority is determined on a case-by-case basis.  <u>White</u>, 21 Cal. 4th at 567.

Because UPS is a corporate employer, Plaintiff must satisfy the requirements of section 3294(b).  She asserts that Meyer, as an operations manager, was a managing agent because he was "in charge of 6 divisions, 23 package centers and approximately 40 managers, 150 supervisors and 4,200 employees."  Muniz Decl. ¶ 40.  That Meyer purportedly supervised thousands of employees does not constitute evidence that he set corporate policy.  Whether "a supervisor is a managing agent within the meaning of Civil Code section 3294 does not necessarily hinge on their level in the corporate hierarchy."  <u>Myers v. Trendwest Resorts, Inc.</u>, 148 Cal. App. 4th 1403, 1437 (2007) (citation and internal quotation marks omitted).  "Rather, the critical inquiry is the degree of discretion the employees possess in making decisions that will ultimately determine corporate policy."  <u>Id.</u> (citation and internal quotation marks omitted).  Plaintiff offers no probative evidence as to this inquiry.  Consequently, she cannot seek punitive damages based on a theory that Meyer was a managing agent who acted maliciously against her.

Nor can Plaintiff seek punitive damages based on inaction by Gill, Davis, Allen or Mattes.  Even if she proved that they were managing agents, Plaintiff offers no argument, let alone any evidence, that any of them knew of Meyer's alleged discriminatory

**United States District Court**
For the Northern District of California

animus and employed him in conscious disregard of her rights.  And
Plaintiff offers no reason to believe that Gill, Davis or Allen
knowingly authorized or ratified alleged discrimination by Meyer.

Accordingly, the Court grants UPS's motion for summary
judgment on Plaintiff's claim for punitive damages.

CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's motion
for leave to file an amended complaint (Docket No. 23) and GRANTS
in part UPS's Motion for Summary Judgment and DENIES it in part
(Docket No. 27).  Plaintiff's claims for retaliation, age
discrimination and punitive damages are summarily adjudicated
against her.  The Court also summarily adjudicates that UPS cannot
be held liable for discrimination based on any conduct that took
place before March 30, 2008.  In all other respects, UPS's motion
is denied.  The Court refers the parties to Magistrate Judge Donna
Ryu for a settlement conference.

A final pretrial conference is scheduled for September 7, 2010
at 2:00 p.m, with a six-day jury trial scheduled to begin on
September 20, 2010 at 8:30 a.m.

IT IS SO ORDERED.

Dated: July 16, 2010

CLAUDIA WILKEN
United States District Judge

30