UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIM MUNIZ, | No. C-09-01987-CW (DMR) |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART MOTION TO QUASH THIRD PARTY SUBPOENA ON THE CUSTODIAN OF RECORDS FOR THE JAFFE LAW FIRM, AND DENYING RELATED MOTIONS** |
| v. | |
| UNITED PARCEL SERVICE, INC., | |
| Defendants. | |

Before the Court is the Motion to Quash Third Party Subpoena on the Custodian of Records for The Jaffe Law Firm ("Motion to Quash"). *See* **Docket No. 180**. Defendant United Parcel Service ("UPS"), opposes the Motion to Quash. Having considered the respective briefs and accompanying submissions, as well as the oral argument of counsel at the January 27, 2011 hearing, the Court hereby **GRANTS in part and DENIES in part** the Motion to Quash, as set forth fully below.

The Court has also taken under submission numerous other motions relating to this discovery dispute, which are deemed suitable for disposition without oral argument pursuant to Civil Local Rule 7-1(b): Motion for Limited Intervention and to Quash Defendant's Subpoenas ("Motion for Limited Intervention") filed by the Consumer Attorneys of California ("CAOC") [**Docket No. 179**]; Joinder of California Employment Lawyers Association ("CELA") in Motion for Limited Intervention and to Quash Defendant's Subpoenas Filed by CAOC [**Docket No. 193**]; UPS' Administrative Motion to Vacate as Moot Motion of CAOC for Limited Intervention and to Quash

Subpoenas and Joinder of CELA [**Docket No. 214**]; UPS' Motion to Strike (1) Unauthorized Filings of Non-Party CELA and (2) Plaintiff's Joinder to Non-Party CELA's Unauthorized Filings [**Docket No. 223**]; UPS' Motion to Strike (1) CELA's Opposition to UPS' Administrative Motion to Vacate as Moot CAOC's Motion for Limited Intervention and to Quash Subpoenas and CELA's Joinder in CAOC's Motion and (2) Plaintiff's Opposition to UPS' Administration Motion to Vacate as Moot CAOC's Motion for Limited Intervention and to Quash Subpoenas and CELA's Joinder in CAOC's Motion [**Docket No. 226**]; UPS' Motion to Strike the Unauthorized Declaration of David M. DeRubertis in Support of Joinder of CELA in Motion for Limited Intervention and to Quash Defendant's Subpoenas by CAOC or, in the Alternative, to Strike Portions of the DeRubertis Declaration [**Docket No. 235**]; UPS' Motion to Strike Unauthorized Declaration of Eric Bailey in Support of Motion for Limited Intervention and to Quash Defendant's Subpoenas by CAOC or, in the Alternative, to Strike Portions of the Bailey Declaration **[Docket No. 238]**.  The foregoing motions are **DENIED as moot** for the reasons indicated below.

Finally, the Request for Referral of Paul Hastings and Attorneys from its Office to California State Bar for Investigation [**Docket No. 218**], and UPS' Motion to Strike (1) Limited Response by CELA to Paul Hastings' Response to Request for Referral of Paul Hastings and Attorneys from its Office to California State Bar for Investigation and (2) Declaration of Jeffrey K. Winikow in Support [**Docket No. 247**] are **DENIED.**

## I. BACKGROUND

This matter arises out of a state court action filed in April 2009 by Plaintiff alleging various forms of discrimination and retaliation by her employer, UPS.  Plaintiff's state court complaint, which charged UPS with violations of the California Fair Employment and Housing Act ("FEHA") and negligence, was removed by UPS to federal court based on diversity of citizenship. Subsequently, two of Plaintiff's four causes of action were dismissed on summary judgment, while the remaining claims proceeded to trial.  At trial, Plaintiff pursued a gender discrimination claim based on three adverse actions alleged against UPS, and was awarded a jury verdict on her claim resulting from one of those adverse actions.  Both Plaintiff and UPS contend that each is the prevailing party in this matter and seek fees under Government Code § 12965. *See* Cal. Gov't. Code

§ 12965 (b) (authorizing reasonable attorneys' fees to prevailing parties under FEHA).

In anticipation of Plaintiff's fee motion, on December 15, 2010,[1] UPS served a subpoena on The Jaffe Law Firm for the following categories of non-privileged documents:[2] (1) all writings describing the "work" of Plaintiff's counsel, Stephen Jaffe ("Jaffe") and Daniel Zaheer ("Zaheer"), in this case; (2) all writings describing Jaffe's and Zaheer's "efforts" and/or "events" in the case; (3) all writings describing or recording the amount of time that Jaffe, Zaheer, and any other employee of their respective firms spent working on the case, and the work performed by each during that time; and (4) all writings describing or recording the collected hourly rate for Jaffe, Zaheer, and any other employee of their respective firms who worked on this case, during the three years prior to service of the UPS subpoena.

For the first two categories of information that request "writings" describing the "work" and "efforts" of Plaintiff's counsel and case "events," UPS defined "writings" to include "electronic communications through email distribution lists or groups (including but not limited to any distribution lists or groups for professional organizations or associations such as the California Employment Lawyers Association, the Consumer Attorneys of California, the San Francisco Trial Lawyers Association, and the National Employment Lawyers Association), websites and/or blogs... MySpace, Facebook, Twitter, LinkedIn, and/or any other internet service provider."

Jaffe filed a Motion to Quash the UPS subpoena on December 23, 2010. As part of its opposition papers, UPS attached as exhibits certain listserv postings, even though UPS knew at the time that the third party custodian of the listserv had asserted a claim of privilege and protection

---

[1] Plaintiff filed her fee motion on December 28, 2010. UPS, which has been granted an extension of time to file its opposition to Plaintiff's fee motion, must submit its opposition by February 10, 2011.

[2] The Court summarizes the categories, which overlap to some degree, in the interest of brevity and clarity. Furthermore, although the subpoena also requests information with respect to Daniel Zaheer ("Zaheer") and any other employee of the firm Kerr & Wagstaff, UPS did not serve a subpoena on Kerr & Wagstaff, Zaheer, or any other employee of that firm. In support of the Motion to Quash, Plaintiff's counsel, Stephen Jaffe ("Jaffe"), has attested that the documents described in UPS' subpoena created by or relating to Kerr & Wagstaff are not under his care, custody, or control. *See* Docket No. 181 (Jaffe Decl. ¶ 20). As neither Kerr & Wagstaff, Zaheer, or any other employee of the firm is subject to a subpoena from UPS, their documents and records of which Jaffe does not have possession, custody, or control are not properly at issue here. UPS does not attempt to dispute this fact; it opposes the Motion to Quash only as it relates to Jaffe.

3

over them. UPS' action triggered a firestorm of motions and filings before the Court – by Jaffe, UPS, and various third parties – that revolve around the issue of whether Jaffe's listserv postings should be produced in response to the subpoena, and whether defense counsel had acted improperly in attaching the exhibits to UPS' opposition papers, thereby inserting them into the public record without an adjudication as to their protected status. In resolving the instant Motion to Quash, the Court also disposes of the other pending motions relating to this discovery dispute.

## II. DISCUSSION

### A. Legal Standard

Since this case arises under diversity jurisdiction, the evaluation of UPS' subpoena is governed by both federal and California law.

#### 1. Relevance standards for discovery related to fee litigation.

In a diversity action, discovery is a procedural matter governed by federal law. *See Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 (1996); *Balarezo v. Nth Connect Telecom, Inc.*, No. C 07-5243 JF (PVT), 2008 WL 2705095, at *1 n.3 (N.D. Cal. July 8, 2008). Under the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense...." Fed.R.Civ.P. 26(b)(1). Moreover, "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id*.

Although relevance generally "has a very broad meaning" for discovery purposes, *see Heathman v. U.S. Dist. Court for Central Dist. of California*, 503 F.2d 1032, 1035 (9th Cir. 1974), discovery in the context of post-trial fee disputes should not involve "the type of searching discovery that is typical" in resolving the merits of a case. *See Nat'l Ass'n of Concerned Veterans v. Secretary of Defense*, 675 F.2d 1319, 1329 (D.C. Cir. 1982). "[U]nlimited adversarial discovery is not a necessary – or even a usual – concomitant of fee disputes." *In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litigation*, 56 F.3d 295, 303 (1st Cir. 1995) (citation omitted). Indeed, the Supreme Court has cautioned that "[a] request for attorney's fees should not result in a second major litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); *see also Nat'l Ass'n of Concerned Veterans*, 675 F.2d at 1329 ("The sound administration of justice requires a balanced,

informed approach to fee awards accomplished in reasonable time without turning such matters into a full trial."). Thus, a court is well within its discretion to deny discovery in fee disputes that would lead to "wasteful and time-consuming satellite litigation." *See In re Thirteen Appeals*, 56 F.3d at 304 (internal quotation omitted). To this end, a district court "retains substantial discretion based on its view of the submissions as a whole to guide any further inquiry" and limit discovery. *See Nat'l Ass'n of Concerned Veterans*, 675 F.2d at 1329. In this regard, the court should ensure that discovery requests "relating to issues other than rates and hours are pointed to clearly relevant issues" and are "precisely framed." *See id.*

2. <u>Determination of reasonable attorneys' fees under California law.</u>

Although federal law governs the scope of relevant discovery, state law establishes the standards and factors to be considered in determining an award of attorneys' fees in a diversity action. *See Winterrowd v. Am. General Annuity Ins. Co.*, 556 F.3d 815, 827 (9th Cir. 2009); *Willis Corroon Corp. of Utah v. United Capitol Ins. Co.*, No. C-97-2208 MHP, 1998 WL 196472, at *1 (N.D. Cal. April 9, 1998).

Under California law, the general rule is that the amount of an attorneys' fee award is within the sound discretion of the trial court in the absence of a patent abuse of that discretion. *Hancock Labs., Inc. v. Admiral Ins. Co.*, 777 F.2d 520, 526 (9th Cir. 1986). Judges may rely on their own knowledge and experience to ascertain reasonable attorneys' fees. *See Scott, Blake & Wynne v. Summit Ridge Estates, Inc.*, 251 Cal. App. 2d 347, 358 (1967). However, the California Supreme Court has "circumscribed [the trial court's] discretion to some extent by approving the touchstone or lodestar adjustment method of calculating the amount of an award." *Flannery v. California Highway Patrol*, 61 Cal. App. 4th 629, 639 (1998) (discussing *Serrano v. Priest*, 20 Cal. 3d 25, 48-49 (1977) (hereinafter "*Serrano III*")). If a court finds that attorneys' fees should be awarded, computation of those fees is based on the lodestar method as set forth in *Serrano III*. *Chavez v. City of Los Angeles*, 47 Cal. 4th 970, 985 (2010) (discussing fees under FEHA). Using this method, "the trial court first determines a touchstone or lodestar figure based on a careful compilation of the time spent by, and the reasonable hourly compensation for, each attorney, and the resulting dollar amount is then adjusted upward or downward by taking various relevant factors into account." *Id*. (citations

1  omitted). Such factors include "(1) the novelty and difficulty of the questions involved, (2) the skill
2  displayed in presenting them, (3) the extent to which the nature of the litigation precluded other
3  employment by the attorneys, [and] (4) the contingent nature of the fee award." *Ketchum v. Moses*,
4  24 Cal. 4th 1122, 1132 (2001) (citing *Serrano III*, 20 Cal. 3d at 49).

5  Thus, the ultimate goal of the lodestar method is to determine a reasonable fee amount.
6  *Chavez*, 47 Cal. 4th at 985. A fee amount may be challenged as unreasonable where the attorney
7  time spent is excessive, duplicative, or unnecessary. *See Premier Med. Mgmt. Sys., Inc. v.*
8  *California Ins. Guar. Ass'n*, 163 Cal. App. 4th 550, 560-62 (2008).

9  Accordingly, with the foregoing standards in mind, the Court analyzes whether the discovery
10 sought by UPS is relevant to the determination of the reasonableness of a fee request under
11 California law.[3]

## B.  **Relevance of Subpoenaed Information**

13 In simplified terms, UPS' subpoena seeks four categories of documents: (1) documents
14 describing the "work" of Plaintiff's counsel in this case; (2) documents describing the "efforts" of
15 Plaintiff's counsel and/or "events" in the case; (3) documents describing or recording the amount of
16 time that Plaintiff's counsel or any other employee at their respective firms spent on the case; and
17 (4) documents describing or recording the collected hourly rate for Plaintiff's counsel and any other
18 employee at their respective firms who worked on the case, for the past three years.

19 For analytical purposes, the Court discusses the four categories of documents in a different
20 order than that presented in UPS' subpoena. First, the Court will address UPS' request for time
21 records in category (3) of the subpoena. Next, the Court will discuss the hourly rate information
22 sought in category (4). Finally, the Court will turn to categories (1) and (2) that demand documents
23 describing the "work'" and "efforts" of Plaintiff's counsel in this case and/or case "events," in which
24 UPS requests electronic postings on various listservs and social media networks. As set forth below,
25 the Court finds that documents describing or recording the time spent on this case as well as

---

[3] Assessing the relevance of UPS' discovery request does not involve the threshold determination of which party is the prevailing party – a determination which is properly before the trial judge in this case.

previously-awarded hourly rates are relevant to Plaintiff's fee motion. However, UPS' request for other documents, including Jaffe's electronic postings on listservs and social media networks, that describe the "work" or "efforts" of Plaintiff's counsel and/or case "events" is vague and overbroad and calls for irrelevant information.

1. <u>Documents describing or recording time spent on the case.</u>

UPS's subpoena seeks documents describing or recording the amount of time that Plaintiff's counsel and their employees spent on the case, from January 1, 2007 to the present. As the party challenging Plaintiff's fee motion, UPS "is entitled to the information... require[d] to appraise the reasonableness of the fee requested and in order... [to] present any legitimate challenges to the application...." *See Nat'l Ass'n of Concerned Veterans*, 675 F.2d at 1329 (addressing the question of when opponent of fee award is entitled to discovery of fee information). The party opposing the fee motion should have access to information "essential in the calculation of the fee award" regarding the "nature and extent of the work done by the [fee] applicant's counsel on various phases of the case." *Id.*

Under California law, "[g]eneral arguments that fees claimed are excessive, duplicative, or unrelated do not suffice." *Premier Med. Mgmt. Sys.*, 163 Cal. App. 4th at 564. Rather, it is the burden of the challenging party to point to specific evidence that the hours spent by opposing counsel are duplicative or excessive. *See id.* at 562, 564. As a result, "[t]he party opposing the fee award can be expected to identify the particular charges it considers objectionable." *Gorman v. Tassajara Dev. Corp.*, 178 Cal. App. 4th 44, 101 (2009). In turn, "trial courts must carefully review attorney documentation of hours expended; 'padding' in the form of inefficient or duplicative efforts is not subject to compensation." *Ketchum*, 24 Cal. 4th at 1132 (citation omitted). To this end, "[t]he evidence should allow the court to consider whether the case was overstaffed, how much time the attorneys spent on particular claims, and whether the hours were reasonably expended." *Christian Research Inst. v. Alnor,* 165 Cal. App. 4th 1315, 1320 (2008).

The Court recognizes that in contrast to some federal courts, California courts do not require contemporaneous time records in order to recover fees. *See Martino v. Denevi*, 182 Cal. App. 3d 553, 559 (1986). For purposes of a fee request, a reconstruction of time spent on tasks performed in

the case may be provided. *See PLCM Group, Inc. v. Drexler*, 22 Cal. 4th 1084, 1096 n.4 (2000). However, the fact that California courts do not mandate the submission of contemporaneous time records in order to *prevail* on a fee motion does not mean that a court may not find time records relevant when a fee opponent challenges the reasonableness of a fee request. *See, e.g.*, *Christian Research Inst.,* 165 Cal. App. 4th at 1320 (court may require fee applicant to produce records sufficient to provide proper basis for determining how much time was spent on particular claims); *Drumm v. Morningstar, Inc.*, 695 F. Supp. 2d 1014, 1022, 1023 n.7 (N.D. Cal. 2010) (recognizing that California law does not require detailed time records, but noting the court was "dissatisfied" with level of detail in fee motion and required submission of additional documentation in order to distinguish work done on claims).

Here, UPS may properly seek information that would enable it to challenge Plaintiff's fee motion and ascertain if specific evidence exists of duplicative, excessive, or unrelated hours. Jaffe has attested that because he worked on a contingency fee basis, he did not maintain "separate time records" of the services he performed on this matter. *See* Docket No. 184-10 (Jaffe Decl. ¶ 27). As a result, Jaffe presents a summary of the hours he worked on various general categories of activities in the case, beginning from the date of Jaffe's "pre-filing activity" on the case in December 2008.[4] *See id.* (Jaffe Decl. ¶¶ 9, 27). Jaffe attests that in order to arrive at this summary information, he "exhaustively examined [his] records, files, documents and electronic data for this case, all of the entries for which were made in the ordinary course of business contemporaneously on or about the date they bear." *See id.* (Jaffe Decl. ¶ 27). To this end, Jaffe provides the protocol he used in tabulating the hours he spent on various activities, which included the actual time spent "together with any associated travel time and preparation" for tasks with a finite time span; actual time spent in court plus "travel and daily preparations for the next day" for trial time spent; and his estimation of the length of time it took him to compose email documents, correspondence, and court-filed

---

[4] At the hearing, UPS conceded that to the extent the subpoena seeks documents relating to time spent by Plaintiff's counsel on this case, the subpoena should be limited to the time when counsel first began representing Plaintiff in December 2008 through the present.

documents. *See id.* (Jaffe Decl. ¶ 28). Thus, Jaffe's declaration appears to indicate that he reconstructed his time spent on this case based on a review of underlying materials.

At the January 27, 2011 hearing, Jaffe clarified his process of reconstructing the time he spent working on this case. Jaffe represented that for tasks with a finite time span where a transcript exists, such as a deposition, he looked at the time indications in the transcript to determine his actual time spent. For other tasks such as travel time, he based his estimates on his knowledge of the time it takes, for example, to fly to the location where the deposition took place. For his time estimates drafting emails, correspondence, pleadings and other documents, Jaffe stated that his estimates were based on a "subjective" process in which he viewed the documents on his computer or in his files and estimated how much time he took to compose the document. He also made various representations about the types of emails, for example, that he included in his time estimates and those that he discounted (*e.g.*, he did not count emails that were very short). Finally, Jaffe stated that to calculate the hours he worked on the case, he reviewed the underlying materials as described above, while tallying his time estimates on a calculator. He represented to the Court that he had no documents to support his estimation, tallying and calculation process other than a "few scraps of paper" that he may still have, upon which he made "cryptic" notes of his calculations.

Accordingly, to the extent Plaintiff is seeking fees for the time Jaffe spent on various case-related activities (*e.g.*, travel time, task preparation, drafting correspondence or briefs), Jaffe's underlying records or notes from which he reconstructed the total time spent on these activities constitute information relevant to this fee dispute. Therefore, with respect to this subpoena request, the Court orders that Jaffe produce by no later than February 3, 2011 all responsive documents in his possession or control as follows: all documents that were created or that otherwise evidence the process of reconstructing the time spent on Plaintiff's case by any timekeeper.

In addition, Jaffe shall submit a sworn declaration to UPS by no later than February 3, 2011 setting forth: (i) his good faith efforts to locate any and all underlying time records or documents evidencing his reconstruction of time spent on this case (including an attestation if no such documents exist); (ii) a list of every document (email, correspondence, brief, etc.) that he reviewed in the process of reconstructing time spent on this case, identified by the date of the document,

1  to/from information (where applicable), the document's subject matter, and the size of the
2  document; and (iii) every deposition or court appearance for which he is claiming time spent on this
3  case, by date and subject matter.

    2.  <u>Documents describing or recording previously-awarded hourly rates.</u>

UPS seeks documents describing or recording "collected hourly rates" for Plaintiff's counsel and other employees who worked on the case based on fee recoveries in previous cases, from December 2007 to the present. UPS argues such information is relevant to the fee dispute because it would inform the reasonable hourly rate for Plaintiff's counsel and other staff who worked on this case.

Under California law, the reasonable hourly rate is the prevailing market rate in the community for similar work. *See PLCM Group*, 22 Cal. 4th at 1095-96. The reasonableness of an hourly rate may be demonstrated if it falls "within the range of reasonable rates charged by and judicially awarded comparable attorneys for comparable work." *See Children's Hosp. & Med. Ctr. v. Bonta*, 97 Cal. App. 4th 740, 783 (2002). In addition, the hourly rates awarded the fee applicant's counsel in other cases may be considered.[5] *See Margolin v. Reg'l Planning Comm'n*, 134 Cal. App. 3d 999, 1005-06 (1982) (trial court did not err by admitting into evidence hourly rates awarded to fee applicant's counsel in nine other public interest lawsuits litigated during period of the suit at issue).

At the hearing, Jaffe represented that in the past three years he has not applied for, nor been awarded attorneys' fees at a specific hourly rate. Rather, he has settled cases and received a lump sum contingent fee. Jaffe also stated that he did not have any documents from which a collected hourly rate could be derived.

UPS' subpoena calls for documents from which one could calculate a "collected" rather than court-awarded hourly rate. For example, if an attorney received a lump sum in a contingency case, a "collected" hourly rate theoretically could be calculated by dividing the total fee by the hours

---

[5] How much weight to accord this information, if any, is another question that is not before the undersigned. In addition, this Court is not expressing an opinion about whether and when a court should consider historical hourly rates of counsel versus the current rate in determining the reasonable market rate.

10

worked on the case. The "collected" hourly rate is arguably quite different from a market hourly rate. Given the relative paucity of information provided by Jaffe in support of Plaintiff's fee motion, the Court finds it appropriate in this case to order the production of all documents evidencing a "collected" hourly rate for the period of three years preceding service of the subpoena. Jaffe is not required to reconstruct or calculate collected hourly rates for that period. The trial court shall decide what, if any, weight to give to such evidence in determining the reasonable hourly rate in this case.

To the extent that Jaffe represents that, after a good faith search he has found no responsive documents, he shall attest to that fact in the declaration described above in Section II.B.1, above.

3. <u>Documents describing the "work" and "efforts" of Plaintiff's counsel in this case and/or case "events," including postings on listservs and social media networks.</u>

UPS separately demands documents describing the "work" and "efforts" of Plaintiff's counsel in this case and/or case "events," including postings on listservs and social media networks. The Court quashes this subpoena request for two reasons.

First, to the extent this demand overlaps with UPS' request for records describing the time spent by Jaffe on this case, the Court has already ordered the production of Jaffe's underlying time records and notes, as described above. This request is therefore duplicative.

Second, UPS' request for documents describing "work," "efforts" or "events" is vague and overbroad, and calls for irrelevant information. As a hypothetical example, a document where Jaffe comments that he cross-examined a certain witness on the third day of trial, or states that he conducted a deposition in the case, is arguably a writing describing his "work" or "events" in the case. However, any possible bearing that such a writing may have on the fee dispute is far too remote to support its production.

To the extent that UPS attempts to demonstrate relevance by relying on Jaffe's electronic postings on listservs and social media networks, the Court finds this claim to be unpersuasive. UPS contends that Jaffe's electronic postings about the case will reveal relevant evidence of his time spent on this case, his market rates, and his skill in handling the instant litigation – and that this information is necessary because Jaffe failed to provide such evidence in support of Plaintiff's fee request. In an attempt to demonstrate that its discovery demand would yield relevant information,

11

1  UPS submitted some postings from Jaffe's Facebook page, as well as three postings from one of the
2  listservs at issue, that of the California Employment Lawyers Association ("CELA").[6]

3  The Court finds that Jaffe's postings on various listservs and social media networks are
4  irrelevant to the fee dispute and that UPS' discovery request for this information is not reasonably
5  calculated to lead to the discovery of admissible evidence. The exhibits that UPS submitted do not
6  indicate otherwise. The CELA postings indicate Jaffe's personal feelings, speculation, or opinions
7  about the case, including the size and character of the jury award, how he viewed the District
8  Judge's actions during the trial, and whether a multiplier on the lodestar is likely to be granted.
9  Whatever Jaffe may think about such matters is wholly irrelevant to the fee dispute. Jaffe's personal
10 impressions about what transpired in the case are not – as argued by UPS – "admissions" that a court
11 may consider in the fee analysis.

12 Furthermore, UPS' reliance on Jaffe's Facebook postings to demonstrate either the relevance
13 or probative value of Jaffe's electronic postings is similarly groundless. UPS argues that the
14 Facebook postings reveal evidence contradicting Plaintiff's purported claim in her fee motion that
15 Jaffe was "severely impaired" from working on other matters while working on this case. UPS
16 appears to hinge its contention on a posting dated August 22, 2010, in which Jaffe mentions settling
17 another case in mediation, as a smoking gun admission that Jaffe in fact worked on other matters
18 besides this case. But UPS misstates the argument made by Plaintiff in her fee motion, in which she
19 actually states that "[b]ecause [Jaffe] is a solo practitioner, any time Mr. Jaffe spent on this case was
20 necessarily time sacrificed working on cases for other clients." *See* Docket No. 184 (Mot. at 18:20-
21 21). In support of this assertion, Plaintiff cites to Jaffe's declaration, in which Jaffe attests he was
22 precluded from working on other matters "*[d]uring the trial*" in this case. *See* Docket No. 184
23 (Mot. at 18:20-24; Docket No. 184-10 (Jaffe Decl. ¶ 25) (emphasis added). First, as a general
24 matter, the fact that time may have been sacrificed on other cases does not mean that Jaffe did not
25 work *at all* on other cases, so no inconsistency is presented here. Second, this posting by Jaffe
26 occurred *prior to* the September start date of the trial in this case. Therefore, the posting does not

---

[6] UPS' unilateral submission of CELA's records, in full knowledge that CELA had asserted that the documents were protected from disclosure, is discussed below.

12

contradict Plaintiff's fee motion, in which Jaffe contends that he was precluded from working on any other cases *during the trial* in this case.

In sum, with respect to Jaffe's listserv and social media postings, UPS' subpoena is not appropriately geared toward revealing information relevant to the fee dispute, such as the time spent by Jaffe on various tasks in this case. The Court underscores that discovery relating to fee litigation should not involve "the type of searching discovery that is typical where issues on the merits are presented." *See Nat'l Ass'n of Concerned Veterans*, 675 F.2d at 1329. Even if UPS had been able to support its claim that production of Jaffe's postings on various listservs or social media sites *might* unearth some information that has some possible bearing on the fee dispute, the relevance of such information would be so attenuated, and the likelihood of finding such information so slight, that the Court is well within its discretion to limit such fee-related discovery requests that are not "precisely framed." *Nat'l Ass'n of Concerned Veterans*, 675 F.2d at 1329. Moreover, it is clear from the disproportionate number of filings arising from this fee-related discovery dispute – not less than twelve motions in the course of one month, accompanied by a flood of opposition and reply papers – that the situation has spiraled into precisely the kind of "wasteful and time-consuming satellite litigation" that should not occur in the proper course of post-trial fee disputes. *See In re Thirteen Appeals*, 56 F.3d at 304 (internal quotation omitted).

Thus, the Court quashes the portion of UPS' subpoena seeking documents describing the "work" and "efforts" of Plaintiff's counsel and case "events," to the extent UPS seeks information beyond that ordered to be produced above in sections II.B.1 and II.B.2. Accordingly, Jaffe's postings on listservs and social media networks shall not be produced.

The CELA listserv and Facebook postings submitted by UPS are not only irrelevant, but the CELA postings are also inflammatory – as admitted by UPS' counsel at the hearing. They are prejudicial and serve no legitimate purpose. For these reasons, the Court strikes from the record Exhibits H, I, J, and M to the Declaration of Elena Baca in support of UPS' opposition to the Motion to Quash, paragraph 17 in Baca's Declaration that sets forth the content of one of these postings, and the corresponding discussion of Exhibits H, I, J, and M in UPS' opposition brief. *See, e.g.*, *Scott v. Unum Life Ins. Co.*, No. C 09-1841 SBA, 2010 WL 5368807, at *10 n.2 (N.D. Cal. Dec. 3, 2010)

(striking settlement agreement and declaration submitted in support of summary judgment opposition brief as irrelevant under Fed.R.Evi. 401); *Wolcoff v. United States*, No. 3:08-cv-0032-JWS, 2010 WL 3210695, at *5 (D. Alaska Aug. 12, 2010) (striking statements made in opposition brief as irrelevant and unduly prejudicial under Fed.R.Evi. 401, 402, and 403); *Madsen v. Idaho Emergency Physicians*, No. CV-08-243-S-EJL-LMB, 2010 WL 1248255, at *3-5 (D. Idaho March 23, 2010) (striking as inadmissible evidence portions of affidavits in support of summary judgment brief); *Cruz v. Oxford Health Plans, Inc.*, No. 03 Civ. 8863(LTS)(JCF), 2008 WL 509195, at *11 (S.D.N.Y. Feb. 26, 2008) (striking as irrelevant paragraphs of attorney's certification accompanying opposition brief).

Finally, the Court denies the parties' respective requests for monetary sanctions and denies the request by Plaintiff and third party CELA to refer UPS' counsel to the State Bar for investigation. Nevertheless, the Court notes that the conduct of UPS' counsel interfered with the judicial process and threatened to impede the fair resolution of this dispute. At the January 27, 2011 hearing, UPS' counsel admitted that she attached the CELA listserv postings to UPS' opposition brief, even though she was fully aware at the time that CELA had asserted a claim of privilege and protection over the postings which, if upheld, would bar the postings from disclosure. This action significantly contributed to the unwarranted cascade of filings, which unnecessarily consumed the resources of the parties, third parties, and the Court. It was inappropriate for UPS to make an extra-judicial, unilateral determination of the merits of its own discovery request by publicly disclosing this information before the Court had ruled on the matter. Moreover, during the hearing, UPS' counsel herself stated that she believed the contents of the postings were not only "inflammatory" but also posed a "security risk" to the Court. Under such circumstances, counsel should have questioned the propriety of disseminating such postings to a wider audience by filing them in the public record. UPS' counsel could have vigorously represented her client's interests, while acting *within* the judicial process, by seeking the Court's prior approval before filing any documents or by requesting an *in camera* review by the Court.

### III.  CONCLUSION

Plaintiff's Motion to Quash is **GRANTED in part and DENIED in part**.

Jaffe shall produce to UPS all responsive documents and the declaration ordered above by no later than **February 3, 2011**.

To the extent UPS' subpoena requests information beyond that ordered to be produced above, including electronic communications posted by Jaffe on various listservs and social media networks, the Motion to Quash is **GRANTED**. As this portion of the subpoena is quashed on grounds of irrelevance, the Court need not reach alternative arguments for withholding this information, including those based on attorney-work product protection and the federal and state Constitution. The Court strikes from the record **Exhibits H, I, J, and M** attached to the Declaration of Elena Baca [**Docket No. 197**] in support of UPS' opposition to the Motion to Quash, as well as **paragraph 17** in Baca's Declaration. The Court also strikes the corresponding discussion of Exhibits H, I, J, and M in UPS' opposition brief [**Docket No. 200**], as follows: **page 8, lines 7-21, 26-28; page 9, lines 15-17.**

**Accordingly, the Court instructs the Clerk to remove from ECF the following documents: Docket No. 197 and Docket No. 200. Within 5 (five) court days after receiving notice that the above documents have been removed from ECF by the Clerk, UPS shall re-file the documents with redactions corresponding to the material stricken from the record as indicated above.**

The other pending motions in this discovery dispute relate to the question of whether UPS' subpoena seeking listserv communications should be allowed. Because the Court has quashed this portion of the subpoena request, the other pending motions [**Docket Nos. 179, 193, 214, 223, 226, 235, and 238**] are **DENIED as moot**. Finally, the request to refer UPS' counsel to the State Bar for investigation [**Docket No. 218**], and UPS' corresponding Motion to Strike [**Docket No. 247**] are **DENIED**.

IT IS SO ORDERED.

Dated: January 28, 2011



DONNA M. RYU
United States Magistrate Judge