IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

<table>
<tr><td>KIM MUNIZ,<br><br>          Plaintiff,<br><br>     v.<br><br>UNITED PARCEL SERVICE, INC.,<br><br>          Defendant.<br>_____/</td><td>No. C 09-01987 CW<br><br>ORDER DENYING UPS'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW, GRANTING IN PART AND DENYING IN PART UPS'S MOTION TO AMEND THE JUDGMENT, DENYING UPS'S MOTION FOR REVIEW OF THE CLERK'S TAXATION OF ITS COSTS, GRANTING IN PART AND DENYING IN PART UPS'S MOTION FOR REVIEW OF THE CLERK'S TAXATION OF PLAINTIFF'S COSTS, DENYING UPS'S MOTION FOR ATTORNEYS' FEES, GRANTING IN PART PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, AND DENYING PLAINTIFF'S MOTION TO STRIKE<br>(Docket Nos. 139, 144, 148, 174, 184, 248 and 276)</td></tr>
</table>

On September 29, 2010, a jury returned a verdict in favor of Plaintiff Kim Muniz on her claim for gender discrimination against Defendant United Parcel Service (UPS). UPS now renews its motion for judgment as a matter of law. It also moves to amend the Clerk's judgment pursuant to Federal Rules of Civil Procedure 60(a) and 59(e),[1] for review of the Clerk's taxation of its costs and

_____

[1] UPS filed two separate motions to amend the Clerk's judgment. However, because the motions seek the same relief and differ only with respect to the rule invoked, the Court considers them together.

United States District Court
For the Northern District of California

Plaintiff's costs, and for attorneys' fees.  Plaintiff opposes the motions and moves for attorneys' fees and non-statutory costs and to strike UPS's notice of recent authority, filed February 23, 2011.  On March 25, 2011, the Court permitted Plaintiff to file additional submissions to support her request for attorneys' fees.  The motions were taken under submission on the papers.  Having considered the papers submitted by the parties, the Court DENIES UPS's renewed motion for judgment as a matter of law, GRANTS in part and DENIES in part its motion to amend the judgment, DENIES its motion for attorneys' fees, DENIES its motion for review of the Clerk's taxation of its costs and GRANTS in part and DENIES in part its motion for review of the Clerk's taxation of Plaintiff's costs.  The Court GRANTS in part Plaintiff's motion for attorneys' fees and non-statutory costs and DENIES her motion to strike.

BACKGROUND

Because the Court's July 16, 2010 Order Denying UPS's Motion for Summary Judgment amply recites the background of this case, the Court provides only a limited discussion below.

Plaintiff has been an employee of UPS since 1978.  In May 2006, she was promoted to Oakland Division Manager.[2]  In April 2008, after her transfers to the San Bruno Division and then to the North Division, Plaintiff was placed on a Manager Performance Improvement Plan (MPIP) by Mary Gill, the Northern California District Manager.  That same month, Gill also recommended that Plaintiff be denied a stock bonus award.  In making her decision to

---

[2] Organizationally, UPS is divided into Regions, which are subdivided into Districts.  Districts are then split into Divisions, which are comprised of Centers.

2

United States District Court
For the Northern District of California

place Plaintiff on the MPIP, Gill consulted with Ron Meyer, UPS's Northern California District Operations Manager.  Previously, Gill had consulted with Meyer regarding other personnel matters related to Plaintiff.

Plaintiff failed to meet some of the goals set forth in the MPIP, which Meyer helped to develop.  After consulting with Meyer; Brian Davis, UPS's Northern California District Human Resources Manager; Mary Sue Allen, UPS's Pacific Region Human Resources Manager; and legal counsel, Gill decided to offer Plaintiff three options: "demotion two levels to a supervisor position; demotion one level to a manager position, with an agreement to continue paying Ms. Muniz at the Division Manager salary level in exchange for a release agreement; or resignation of employment with severance pay and a release agreement."  Gill Decl. in Support of UPS's Mot. for Summ. J. ¶ 25.  Accompanied by Meyer and Davis, Gill notified Plaintiff of her options on August 29, 2008 and gave her twenty-one days to respond.  Because Plaintiff did not respond timely, Gill decided, after consulting with Davis, Allen and legal counsel, to demote Plaintiff to a supervisor position.

Plaintiff brought four causes of action against UPS: (1) gender discrimination, in violation of the California Fair Employment and Housing Act (FEHA); (2) unfair retaliation, in violation of the FEHA; (3) age discrimination, in violation of the FEHA; and (4) negligent hiring, training and supervision.  The Court granted summary judgment in favor of UPS on Plaintiff's FEHA retaliation claim because she had failed to create a triable issue with respect to causation; Plaintiff had conceded at the hearing on UPS's motion for summary judgment that she could not maintain her

FEHA retaliation claim.[3]  Because she had withdrawn her age discrimination claim, summary judgment was granted in favor of UPS on it.

In its trial brief and at the final pretrial conference, UPS asserted that Plaintiff's negligent hiring, training and supervision claim duplicated her FEHA gender discrimination claim. At that time, Plaintiff maintained that her negligence claim was "qualitatively different" from her discrimination claim. Nonetheless, Plaintiff did not litigate her negligence claim at trial.

A jury trial was held on Plaintiff's FEHA gender discrimination claim.  This claim rested on three alleged adverse actions: (1) the denial of a stock bonus; (2) her placement on the MPIP; and (3) her demotion from division manager to supervisor. The jury found that UPS's decision to deny Plaintiff a stock bonus was not motivated by her gender.  It concluded that UPS's decision to place her on an MPIP, although motivated by her gender and a substantial factor in causing her harm, was made for both

_____

[3] Plaintiff misstates the procedural history of this case. She states that the Court held her "retaliation claim" to be "procedurally barred by plaintiff's failure to correct a technical pleading error in her Complaint on or before August 18, 2009." See, e.g., Pl.'s Opp'n to Mot. to Amend J. 2.  This statement appears to refer to retaliation claims under the California Labor Code and a "wrongful employment practices" claim for which she sought leave to add to her complaint.  This statement cannot refer to her FEHA retaliation claim, which was plead in her complaint. As the Court clearly stated in its July 16, 2010 Order, Plaintiff was denied leave to add her claims for Labor Code retaliation and "wrongful employment practices" because she failed to demonstrate good cause to excuse her failure to add them in a timely fashion and because amendment would have been futile in that she did not offer sufficient evidence to support a causal link between protected conduct and any adverse action.  See Order of Jul. 16, 2010, at 9-10, 15-17.

**United States District Court**
For the Northern District of California

discriminatory and non-discriminatory reasons and that UPS would have made the same decision for a non-discriminatory reason. However, the jury found that Plaintiff's gender motivated UPS to demote her, it was a substantial factor in causing her harm and UPS would not have demoted her for a non-discriminatory reason.  The jury awarded Plaintiff $27,280.00, which was the sum of $9,990 for her lost earnings, $7,300 for her past medical expenses and $9,990 for her past non-economic loss.

On October 26, 2010, UPS filed its bill of costs, asking the Clerk to tax $34,955.06 against Plaintiff.  On December 1, 2010, the Clerk refused to tax costs in favor of UPS because the judgment did not indicate it was entitled to costs.

On December 28, 2010, Plaintiff filed her bill of costs, asking the Clerk to tax $15,356.18 against UPS.  On January 19, 2011, after disallowing various costs, the Clerk taxed $12,805.55 against UPS.

DISCUSSION

I.   Motion for Judgment as a Matter of Law

A motion for judgment as a matter of law after the verdict renews the moving party's prior Rule 50(a) motion for judgment as a matter of law at the close of all the evidence.  Fed. R. Civ. P. 50(b).  Judgment as a matter of law after the verdict may be granted only when the evidence and its inferences, construed in the light most favorable to the non-moving party, permits only one reasonable conclusion as to the verdict.  Josephs v. Pac. Bell, 443 F.3d 1050, 1062 (9th Cir. 2006).  Where there is sufficient conflicting evidence, or if reasonable minds could differ over the verdict, judgment as a matter of law after the verdict is improper.

United States District Court
For the Northern District of California

See, e.g., Kern v. Levolor Lorentzen, Inc., 899 F.2d 772, 775 (9th Cir. 1990); Air-Sea Forwarders, Inc. v. Air Asia Co., 880 F.2d 176, 181 (9th Cir. 1989).

Plaintiff sought liability on her gender discrimination claim on the theory that Meyer harbored gender-based animus and contributed materially to Gill's decision to demote her. Plaintiff offered sufficient evidence of both to support the jury's verdict.

At trial, among other evidence, Plaintiff presented testimony by Benn Camicia and Joe Woulfe, who testified that Meyer treated women more harshly than men. Plaintiff also testified that, during conference calls, Meyer was more critical of women than men. UPS points to testimony regarding Meyer's occasional positive treatment of Tristen Christensen. This testimony did not, in light of all other evidence, require the jury to conclude that Meyer lacked gender-based animus.

Plaintiff also presented evidence of Meyer's influence over Gill's decision-making. Witnesses testified that Gill consulted with Meyer on various occasions regarding her decisions concerning Plaintiff and sought his opinion on Plaintiff's job performance. Further, although Gill may have placed Plaintiff on the MPIP, Meyer fashioned its terms and oversaw its implementation.[4] Plaintiff's

---

[4] Throughout its papers, UPS suggests that the jury found that the MPIP was not a product of discrimination. This is not entirely accurate. Although the jury found that UPS was not liable for disability discrimination based on the MPIP, it did so because it concluded that UPS had both discriminatory and non-discriminatory reasons for subjecting Plaintiff to an MPIP and that UPS would have done so for a non-discriminatory reason. This is not inconsistent with a finding that Meyer contributed materially to Gill's decision-making. Indeed, because the jury found that discriminatory reasons motivated the imposition of the MPIP, its

(continued...)

**United States District Court**
For the Northern District of California

failure to meet the terms of the MPIP led to her demotion.  All of this, along with other evidence admitted at trial, supported the jury's conclusion that Meyer contributed materially to Gill's decision to demote Plaintiff.  <u>Reeves v. Safeway Stores, Inc.</u>, 121 Cal. App. 4th 95, 109 (2004); <u>see also</u> <u>Poland v. Chertoff</u>, 494 F.3d 1174, 1182 (9th Cir. 2007) (stating that an allegedly independent adverse employment decision can be tainted "if the plaintiff can prove that . . . the biased subordinate influenced or was involved in the decision or decisionmaking process").  That Gill was the ultimate decisionmaker does not warrant judgment as a matter of law in favor of UPS.  <u>See</u> <u>Staub v. Proctor Hosp.</u>, 131 S. Ct. 1186, 1192 (2011) ("the exercise of judgment by the decisionmaker does not prevent the earlier agent's action (and hence the earlier agent's discriminatory animus) from being the proximate cause of the harm").

UPS asserts that, notwithstanding these findings, the evidence established that it would have demoted Plaintiff based on her performance and that no reasonable jury could have concluded otherwise.  However, there was conflicting evidence regarding Plaintiff's effectiveness.  Although some measures suggested that Plaintiff did not perform proficiently, others suggested that she did.  Because reasonable minds could have differed with respect to Plaintiff's job performance, UPS is not entitled to judgment as a matter of law with respect to its defense.

Accordingly, UPS's renewed motion for judgment as a matter of

---

⁴(...continued)
verdict suggests that Meyer contributed materially to Gill's decision concerning it.

law is denied.

II.   Motion to Amend the Clerk's Judgment

    Pursuant to Federal Rules of Civil Procedure 60(a) and 59(e), UPS moves to amend the Clerk's judgment to state that it was the prevailing party in this action or, in the alternative, to state that neither party prevailed.  It also moves to amend the Clerk's judgment so that it states the disposition of each of Plaintiff's claims in this action.

    Rule 60(a) pertains to corrections of clerical mistakes and "'blunders in execution.'"  Harman v. Harper, 7 F.3d 1455, 1457 (9th Cir. 1993) (quoting Blanton v. Anzalone, 813 F.2d 1574, 1577 n.3 (9th Cir. 1987)).  A district court's invocation of Rule 60(a) is appropriate so long as the correction made is "intended to conform the judgment to the original intention of the court." Harman, 7 F.3d at 1457.

    Rule 59(e), in contrast, applies in circumstances in which there is a "substantive change of mind by the court." Miller v. Transamerican Press, Inc., 709 F.2d 524, 527 (9th Cir. 1983) (citation omitted).  "Amendment or alteration is appropriate under Rule 59(e) if (1) the district court is presented with newly discovered evidence, (2) the district court committed clear error or made an initial decision that was manifestly unjust, or (3) there is an intervening change in controlling law." Zimmerman v. City of Oakland, 255 F.3d 734, 740 (9th Cir. 2001) (citation omitted).

    A.   Prevailing Party in Action

    Rule 59(e) governs UPS's request to amend the judgment to state that it was the prevailing party or, in the alternative, to

8

United States District Court
For the Northern District of California

state that neither party prevailed.  Such an amendment would reflect a substantive change in the judgment.  UPS contends that the designation of Plaintiff as the prevailing party was clear error and manifestly unjust.

Generally, a court's decision to award costs is governed by federal law, even in diversity cases.  <u>Champion Produce, Inc. v. Ruby Robinson Co., Inc.</u>, 342 F.3d 1016, 1022 (9th Cir. 2003).  Federal Rule of Civil Procedure 54(d)(1) provides that, unless "a federal statute, these rules, or a court order provides otherwise, costs -- other than attorney's fees -- should be allowed to the prevailing party."  A prevailing party for the purposes of costs is the party "in whose favor judgment is rendered."  <u>San Diego Police Officers' Ass'n v. San Diego City Employees' Retirement Sys.</u>, 568 F.3d 725, 741 (9th Cir. 2009) (citation and internal quotation marks omitted).  It is not "necessary for a party to prevail on all of its claims to be found the prevailing party."  <u>Id.</u> (citing <u>K-2 Ski Co. v. Head Ski Co.</u>, 506 F.2d 471, 477 (9th Cir. 1974) (affirming that plaintiff was prevailing party, even though it had prevailed on two out of twelve claims)).

It was neither clear error nor manifestly unjust to designate Plaintiff as the prevailing party for the purposes of costs.  Although she did not succeed on all of her claims, the jury found in her favor with respect to her gender discrimination claim.  UPS attempts to minimize this achievement by asserting that Plaintiff plead six claims and was successful on only one.  This

representation is incorrect.[5]  The amount the jury awarded to Plaintiff does not deprive her of prevailing party status for the purposes of costs.

UPS relies primarily on Roberts v. Madigan, 921 F.2d 1047 (10th Cir. 1990), which likewise does not warrant a contrary conclusion.  Roberts reiterates that awarding costs is a matter within a court's discretion and that costs may be awarded to parties that partially prevail in a case.  Id. at 1058.

Finally, it was neither clear error nor manifestly unjust for the Court to decline to find that neither party prevailed and order each party to bear its own costs.  UPS does not cite any authority requiring this outcome.

Accordingly, the Court denies UPS's motion to amend the judgment to state that, for the purposes of costs, UPS was the prevailing party or, in the alternative, to state that neither party prevailed.  Because UPS was not the prevailing party in this action, it is not entitled to costs.  Thus, the Court denies UPS's motion for review of the Clerk's taxation of its costs.

B.   Disposition of Plaintiff's Claims

UPS's request to amend the judgment to indicate the outcome of all of Plaintiff's claims would not substantively change the result in this case.  Accordingly, Rule 60(a) governs this request.

The Clerk's judgment indicates only that, following a jury trial, Plaintiff is entitled to recover from UPS "the sum of

---

[5] As noted above, Plaintiff brought only four claims, two of which were disposed of at summary judgment and one of which was not litigated at trial.  UPS counts Plaintiff's single gender discrimination claim as three separate claims because she sought liability based on three different acts.

United States District Court
For the Northern District of California

$27,280.00, with interest thereon as provided by 28 U.S.C. § 1961, and her costs of action."   The judgment does not indicate the disposition of Plaintiff's claims.

The Court grants this request.   The Clerk will be directed to enter an amended judgment that includes the deposition of Plaintiff's claims.

III. UPS's Motion for Review of the Clerk's Taxation of Plaintiff's Costs

Federal Rule of Civil Procedure 54(d)(1) authorizes the Court to grant the prevailing party its costs.   The determination of taxable costs is governed by 28 U.S.C. § 1920 and, more particularly, Civil L.R. 54-3, which specifically enumerates the standards for costs recoverable in this District.   This Court may only tax costs explicitly authorized by § 1920.   See Alflex Corp. v. Underwriters Labs., Inc., 914 F.2d 175, 177-78 (9th Cir. 1990); see also Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 442 (1987).

As noted above, the Clerk taxed UPS $12,805.55 for Plaintiff's costs.

A.   Exemplification and Copying Costs

The Clerk awarded Plaintiff $1,047.78 for exemplification and copying costs.   UPS argues that Plaintiff should receive nothing for such expenses because her bill of costs did not contain a request for reimbursement for them and because she failed to establish that the copies she made were necessary.   To the extent the Court allows such costs, UPS asserts that Plaintiff should recover no more than $60.36 because Plaintiff only provided legible receipts for this amount.

11

United States District Court
For the Northern District of California

To demonstrate these costs were necessary, Plaintiff tenders only her counsel's representation that all of the copy charges were related to documents used in connection in this case. Generally, such an assertion is not sufficient. However, given its knowledge of this case, the Court finds $1,047.78 to be reasonable for copying costs and awards this amount in full.

B.   Clerk's Award for "Supplies"

The Clerk awarded Plaintiff $903.83 for miscellaneous supplies. Plaintiff's counsel represents that these supplies include computer hardware, cables and pens. Such costs are not taxable under § 1920. Accordingly, $903.83 for the cost of office supplies is disallowed.

C.   Cost for Service of Subpoena

The Clerk taxed $24.48 for messenger fees. Plaintiff's counsel indicates that this cost related to service of a witness subpoena. UPS argues this cost should be disallowed because the subpoena was ineffective and unnecessary. However, Plaintiff has shown that this cost was "reasonably required and actually incurred." Civ. L.R. 54-3(a)(2). Accordingly, the Court leaves this amount undisturbed.

D.   Summary

Based on UPS's objections, the Court disallows $903.83 in costs for computer hardware and office supplies. The Court declines to reduce Plaintiff's costs award any further. Accordingly, $11,901.72 is taxed against UPS.

IV.  Motions for Attorneys' Fees

"An award of attorneys' fees incurred in a suit based on state substantive law is generally governed by state law." <u>Champion</u>

12

United States District Court
For the Northern District of California

Produce, 342 F.3d at 1024.  Under the FEHA, courts have discretion to award reasonable attorneys' fees to "the prevailing party, . . . except where the action is filed by a public agency or a public official, acting in an official capacity."  Cal. Gov. Code § 12965(b).  To determine whether a fee award under the FEHA is appropriate, California courts look to federal decisions addressing such awards under Title VII.  Chavez v. City of L.A., 47 Cal. 4th 970, 985 (2010).

For the purposes of attorneys' fee awards in civil rights cases, plaintiffs who do not prevail on all of their claims may be deemed prevailing parties entitled to recover attorneys' fees.  Fox v. Vice, 131 S. Ct. 2205, 2214 (2011); Mendez v. Cnty. of San Bernardino, 540 F.3d 1109, 1125 (9th Cir. 2008).[6]  Civil rights plaintiffs who are only partially successful in obtaining relief can be prevailing parties, so long as they succeed "'on any significant claim affording some of the relief sought.'"  Hashimoto, 118 F.3d at 677 (quoting Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 791 (1989)).  Even civil rights plaintiffs who secure nominal damages can be considered prevailing parties entitled to recover attorneys' fees.  Mendez, 540 F.3d at 1125 (citing Farrar v. Hobby, 506 U.S. 103, 112 (1992)).

California courts have adopted the standard set forth in Christiansburg Garment Co. v. EEOC, 434 U.S. 412 (1978), in which the United States Supreme Court held that "a prevailing plaintiff

---

[6] Mendez and other cases interpreting 42 U.S.C. § 1988 are relevant to interpreting 42 U.S.C. § 2000e-5(k), the attorneys' fees provision of Title VII.  Hashimoto v. Dalton, 118 F.3d 671, 677 n.2 (9th Cir. 1997).

should ordinarily recover attorney fees unless special
circumstances would render the award unjust, whereas a <u>prevailing</u>
<u>defendant</u> may recover attorney fees only when the plaintiff's
action was frivolous, unreasonable, without foundation, or brought
in bad faith." <u>Chavez</u>, 47 Cal. 4th at 985 (emphasis in original).

   A.   UPS's Motion for Attorneys' Fees

   UPS asks the Court to award it $419,219.17 in attorneys' fees.
Of this amount, UPS claims that $163,343.70 is attributable to
Plaintiff's retaliation and age discrimination claims, which it
claims were frivolous, and the balance relates to its attorneys'
work following the disposition of its summary judgment motion on
Plaintiff's two failed bases for liability for gender
discrimination.

   UPS does not establish that it is entitled to attorneys' fees.
Although Plaintiff did not succeed on all of her claims, she
secured a jury verdict in her favor and an award of damages for her
gender discrimination claim.  UPS misses the point when it argues
that Plaintiff did not prevail on her entire lawsuit and obtain a
"total victory."  UPS Reply in Support of Mot. for Attorneys' Fees
8.  This does not entitle UPS to attorneys' fees.

   Indeed, UPS fails to identify fees it would not have incurred
but for the claims it believes to be frivolous.  <u>See</u> <u>Fox</u>, 131 S.
Ct. at 2214-16.  UPS seeks "half of its fees prior to summary
judgment" because it "prevailed on two out of four claims" and
"two-thirds of its fees after summary judgment" because it
"prevailed at trial on two of Plaintiff's three alleged adverse
actions."  UPS Mot. for Attorneys' Fees at 2.  However, when a
defendant's fees are shifted onto an unsuccessful civil rights

14

United States District Court
For the Northern District of California

plaintiff, "the pro-rata allocation of general fees between claims for which a fee award is appropriate and claims for which such an award is not appropriate, based solely on the number of claims, is impermissible." Harris v. Maricopa Cnty. Superior Court, 631 F.3d 936, 971 (9th Cir. 2011); see also Fox, 131 S. Ct. at 2215-17 (discussing circumstances in which a defendant may recover attorneys' fees). A "defendant must demonstrate that the work for which it asserts that it is entitled to fees would not have been performed but for the inclusion of the frivolous claims in the complaint." Harris, 631 F.3d at 972. UPS does not meet this standard. Instead, it supports its fee request with its counsel's unsubstantiated estimate that counsel's pro-rata division of fees among Plaintiff's claims accurately reflects the work performed on them. See Baca Decl. in Support of Mot. for Attorneys' Fees ¶¶ 16 and 18. Counsel's estimate, without any analysis, is not sufficient. Track Mortgage Group, Inc. v. Crusader Insurance Co., 98 Cal. App. 4th 857 (2002), and Shadoan v. World Savings and Loan Association, 219 Cal. App. 3d 97 (1990), do not support UPS's position; they were not civil rights cases and do not implicate the policies associated with the FEHA.

Accordingly, UPS's motion for attorneys' fees is denied.

B.   Plaintiff's Motion for Attorneys' Fees and Non-Statutory Costs

As noted above, the jury awarded Plaintiff $27,280.00. Plaintiff requests $1,943,647.50 in attorneys' fees and $12,009.09 in non-statutory costs. Below, Plaintiff's fee request is summarized.

//

15

| Attorney | Hourly Rate | Hours Billed[7] | Total Fees |
|---|---|---|---|
| Stephen Jaffe | $650.00 | 1,610.8 | $1,047,020.00 |
| Daniel Zaheer | $350.00 | 395.2 | $138,320.00 |
| Kathryn Landman | $290.00 | 28.1 | $8,149.00 |
| Susan Jaffe | $195.00 | 531.6 | $103,662.00 |
| | | subtotal | $1,297,151.00 |
| | subtotal x proposed 1.5 lodestar multiplier | | $1,945,726.50 |

For the purposes of attorneys' fees, Plaintiff prevailed in this action. Although she was only partially successful, she prevailed on her claim for gender discrimination and obtained an award of damages. Thus, the Court considers the amount of attorneys' fees and costs to which she is entitled, if any.

Under the FEHA, courts employ the lodestar method set forth in Serrano v. Priest, 20 Cal. 3d 25 (1977), to determine the amount of attorneys' fees to which prevailing parties are entitled. Chavez, 47 Cal. 4th at 985. "Using that method, the trial court first determines a touchstone or lodestar figure based on a careful compilation of the time spent by, and the reasonable hourly compensation for, each attorney, and the resulting dollar amount is then adjusted upward or downward by taking various relevant factors into account." Id. Courts must consider the "ultimate goal" of this process, which is "'to determine a 'reasonable' attorney fee, and not to encourage unnecessary litigation of claims that serve no public purpose either because they have no broad public impact or because they are factually or legally weak.'" Id. (quoting Weeks

---

[7] Mr. and Mrs. Jaffe's totals include hours billed after December 28, 2010. Mr. Zaheer and Ms. Landman's totals include hours billed up through that date.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

v. Baker & McKenzie, 63 Cal. App. 4th 1128, 1173 (1998)).

California law encourages prevailing parties to seek reasonable attorneys' fees in the first instance. "A fee request that appears unreasonably inflated is a special circumstance permitting the trial court to reduce the award or deny one altogether." Serrano v. Unruh, 32 Cal. 3d 621, 635 (1982); accord Chavez, 47 Cal. 4th at 990. "'If . . . the Court were required to award a reasonable fee when an outrageously unreasonable one has been asked for, claimants would be encouraged to make unreasonable demands, knowing that the only unfavorable consequence of such misconduct would be reduction of their fee to what they should have asked for in the first place. To discourage such greed, a severer reaction is needful.'" Unruh, 32 Cal. 3d at 635 (quoting Brown v. Stackler, 612 F.2d 1057, 1059 (7th Cir. 1980)) (alterations by Unruh court).

> 1.   Reasonable Hourly Rates

UPS objects to the hourly rates of all of Plaintiff's counsel, arguing Plaintiff does not adequately support her fee request.

To ascertain an attorney's reasonable hourly rate, courts consider "the hourly prevailing rate for private attorneys in the community conducting noncontingent litigation of the same type." Ketchum v. Moses, 24 Cal. 4th 1122, 1133 (2001) (emphasis in original). The moving party has the burden "to prove the appropriate market rate to be used in calculating the lodestar." MBNA Am. Bank, N.A. v. Gorman, 147 Cal. App. 4th Supp. 1, 16 (2006). To support a fee request, that party may submit expert witness testimony regarding attorneys' fees and declarations containing "verifiable information regarding rates allowed by

17

courts." <u>Children's Hosp. & Med. Ctr. v. Bonta</u>, 97 Cal. App. 4th

740, 782-83 (2002).  In "assessing a reasonable hourly rate, the

trial court is allowed to consider the attorney's skill as

reflected in the quality of the work, as well as the attorney's

reputation and status." <u>Gorman</u>, 147 Cal. App. 4th Supp. at 13

(citing <u>Ketchum</u>, 24 Cal. 4th at 1139); <u>see also</u> <u>Blum v. Stenson</u>,

465 U.S. 886, 896 (1984) (noting that the reasonableness inquiry

requires consideration of the rates charged for "similar services

by lawyers of reasonably comparable skill, experience and

reputation").

              a.   Stephen Jaffe

     In its March 25, 2011 Order, the Court explained that the

evidence Plaintiff proffered was inadequate to show that Mr.

Jaffe's $650.00 rate was reasonable and invited her to submit

competent evidence that it is.

     Plaintiff now provides the declaration of Laurence O. Masson,

who has practiced law in California since 1979 and, since 1997, has

focused primarily on plaintiffs' civil rights and employment cases.

Mr. Masson has worked with Mr. Jaffe and believes that the $650.00

per hour rate is within the range of hourly rates for practitioners

in the Bay Area of "comparable training, skill, experience,

insight, and good judgment."  Masson Decl. ¶ 6.  He does not,

however, identify any other attorneys situated similarly to Mr.

Jaffe who command an hourly rate of $650.00.

     Plaintiff also submits the declaration of Richard M. Pearl, an

attorney and author of a treatise on attorneys' fee awards in

California.  Mr. Pearl states that "the rates requested by

Plaintiff's counsel in this case are well in line with the non-

contingent market rates charged for reasonably similar services by litigation attorneys of similar qualifications and experience in the San Francisco Bay Area." Pearl Decl. ¶ 8. He provides a list of attorneys' hourly rates found to be reasonable by other courts, along with those attorneys' years of experience. Mr. Pearl does not, however, indicate those attorneys' skills or reputation.

These new submissions and the declarations of Mary Dryovage and James Wagstaffe, which Plaintiff submitted with her initial filing, do not justify Mr. Jaffe's requested $650.00 hourly rate. None of the declarants directly compare Mr. Jaffe to counsel of similar skill, experience and reputation for whom a $650.00 hourly rate is reasonable. Although this is not necessary, the declarants' unexplained assertions are not sufficient. Plaintiff insists that Mr. Jaffe's years in practice justify her fee request. However, even Mr. Pearl's declaration demonstrates that an attorney's number of years in practice does not necessarily correlate with the appropriate hourly rate for that attorney. See, e.g., Pearl Decl. at 7:16-17 (stating that, in a wage-and-hour class action, attorney with forty-one years of experience was awarded $600.00 per hour, while attorney with forty years was $700.00 per hour); id. at 20:24-26 (stating that, in 2008, defense-side law firm charged $675.00 per hour for work by attorney with forty-five years of experience and $785.00 for work by attorney with thirty-three years of experience).

The Court is familiar with Mr. Jaffe's work and finds a $445.00 hourly rate to be reasonable. The reasonableness of this rate is supported by evidence that, in 2010, the average billing rate for partners at a San Francisco defense-side employment law

**United States District Court**
For the Northern District of California

firm was $445.00 per hour.  _See_ Baca Decl. ¶ 12; _see also_ _Mitchel_
_v. City of Santa Rosa_, 2010 WL 2740069, at *2 (N.D. Cal.) (awarding
$420.75 per hour for Bay Area law firm partner with thirty-six
years of experience in defense-side employment law litigation).

b.   Other Attorneys and Paralegal

Attorney Zaheer is a 2004 graduate of Stanford Law School who
has clerked for a federal district court and the Ninth Circuit
Court of Appeals.  He has also worked in two private law firms and
the San Francisco City Attorney's Office.  Mr. Wagstaffe states
that his firm bills its clients $350.00 for Mr. Zaheer's work.
Based on his experience, Mr. Zaheer's $350.00 hourly rate is
reasonable.

Attorney Landman is a 2008 graduate of the University of
California, Hastings College of Law.  At the time she performed
work in this case, she had been in practice for approximately one-
and-a-half years.  The Court finds Ms. Landman's hourly rate
excessive with respect to her experience.  _See, e.g._, _Mitchel_, 2010
WL 2740069, at *2 (awarding $238.00 per hour for defense-side
employment law associate at Bay Area law firm who had graduated in
2006); _Campbell v. Nat'l Passenger R.R. Corp._, 718 F. Supp. 2d
1093, 1101 (N.D. Cal. 2010) (awarding $245.00 per hour for 2007 law
school graduate who acted as second-chair in employment
discrimination trial).  The Court concludes that $230.00 is a
reasonable hourly rate for Ms. Landman.

Paralegal Susan Jaffe graduated in 2009 from San Francisco
State University's paralegal program.  There is no evidence,
however, indicating that Mrs. Jaffe had experience as a paralegal
before her graduation.  Although Mr. Jaffe, whom Mrs. Jaffe

United States District Court
For the Northern District of California

assisted, states that her "hourly billing rate is $195," this does not indicate whether her requested rate comports with those of similarly situated paralegals in the Bay Area.  Plaintiff relies on the maximum hourly rates of UPS's counsel's paralegals; however, there is no evidence that these rates are reasonable.  The Court finds Mrs. Jaffe's hourly rate is excessive in light of her one year of experience.  See, e.g., Mitchel, 2010 WL 2740069, at *2 (N.D. Cal.) (awarding $136.00 per hour for paralegal at Bay Area law firm who had ten years of experience and a degree in paralegal studies); Campbell, 718 F. Supp. 2d at 1101 (awarding $160.00 per hour for paralegals).  Plaintiff offers evidence that the lowest billing rate for one of UPS's paralegals was $130.00 per hour.  See Zaheer Decl. 5:26.  Because Mrs. Jaffe appears to have limited experience as a paralegal, the Court concludes that $130.00 is a reasonable hourly rate for her.

        2.   Reasonable Number of Hours

    In challenges to the reasonableness of the number of hours billed, "it is the burden of the challenging party to point to the specific items challenged, with a sufficient argument and citations to the evidence."  Premier Med. Mgmt. Sys., Inc. v. Cal. Ins. Guarantee Ass'n, 163 Cal. App. 550, 564 (2008).  "General arguments that fees claimed are excessive, duplicative, or unrelated do not suffice."  Id.  If the opposing party cannot provide specific, persuasive reasons to disallow recovery for some of the hours billed, courts should normally award fees for the total number of hours billed or, at most, impose a ten-percent reduction.  See Moreno v. City of Sacramento, 534 F.3d 1106, 1112, 1116 (9th Cir. 2008).

United States District Court
For the Northern District of California

a.   Stephen Jaffe

For this action, Mr. Jaffe did not maintain contemporaneous time records.  Under California law, his failure to do so does not preclude Plaintiff from recovering amounts for his services.  See, e.g., Martino v. Denevi, 182 Cal. App. 3d 553, 559 (1986).  Nevertheless, although not necessary, contemporaneous time records are strongly preferred.  See Fischer v. SJB-P.D. Inc., 214 F.3d 1115, 1121 (9th Cir. 2000) (citing United States v. $12,248 U.S. Currency, 957 F.2d 1513, 1521 (9th Cir. 1991)).

In its March 25, 2011 Order, the Court explained that Mr. Jaffe's so-called "protocol" for reconstructing the number of hours he worked was not sufficient.  Mr. Jaffe now states that, to determine the hours he expended, he relied on various documents, including docket sheets, calendars, trial and deposition transcripts, and UPS's counsel's billing records.  He explains that he "examined each and every document from [these] data sources" and estimated the amount of time he spent on various tasks.  Jaffe Decl. in Support of 2d Reply Brief for Pl.'s Mot. for Attorneys' Fees ¶ 4.  With respect to the number of hours he spent reading emails, Mr. Jaffe counted the number of emails he sent and received and estimated that he spent between one-tenth and two-tenths of an hour composing or reading each message.  Thus, he multiplied 3,810 emails by fifteen-hundredths of an hour to determine that he spent 571.5 hours dealing with electronic communication.

UPS objects to Mr. Jaffe's reconstruction on numerous grounds.  First, UPS complains that the number of hours Mr. Jaffe claims is unreasonably high.  Among other things, it points to his claims that he spent 11.8 hours preparing Plaintiff's four-page initial

22

disclosures; 2.5 hours reviewing UPS's three-and-a-half page opposition to Plaintiff's administrative motion for an extension of time, which did not require a reply brief; and one hour to draft a one-sentence joinder in a third-party's request to the Magistrate Judge to refer UPS's counsel to the State Bar of California for investigation. An independent review of his time records reveals additional unreasonable expenditures of time. For instance, Mr. Jaffe claims that he spent thirty minutes reviewing the Clerk's eight-line judgment. He also asserts that he spent twelve minutes reviewing the Court's three-sentence order of February 10, 2011 striking UPS's objections to evidence submitted by Plaintiff in support of her motion for attorneys' fees. This Order was filed approximately 1.5 hours after those objections were filed. Mr. Jaffe claims, however, that he nevertheless spent 2.8 hours reviewing UPS's objections. These entries, which were estimated and not made contemporaneously, detract from the Court's confidence in Mr. Jaffe's reconstruction.

Second, UPS complains that Mr. Jaffe's records reflect unnecessary tasks, citing the 4.3 hours he claims he spent to prepare for and attend Plaintiff's deposition in the "Harris case." Plaintiff does not explain why Mr. Jaffe's work with respect to Harris is relevant to her case.

Finally, UPS argues that it is unreasonable for Plaintiff to recover at Mr. Jaffe's full $650.00 rate for secretarial or paralegal work he completed. Mr. Jaffe does not dispute that he billed for such work, but asserts that he is a solo practitioner with only one staff member. However, clerical and secretarial work are not compensable as attorneys' fees. Davis v. City & Cnty. of

United States District Court
For the Northern District of California

S.F., 976 F.2d 1536, 1543 (9th Cir. 1992), vacated in part on other grounds, 984 F.2d 345 (9th Cir. 1993).

In light of the circumstances of this case, Plaintiff's request with respect to Mr. Jaffe's hours is unreasonable. Some of the hours claimed by Mr. Jaffe are excessive in relation to the tasks he undertook. This casts doubt on the accuracy of his reconstruction. Further, Mr. Jaffe block-billed for the number of hours he spent reading and writing emails. Based on these factors, the Court disallows recovery for twenty percent of Mr. Jaffe's hours. Notably, in light of an inflated fee request, California law grants the Court discretion to reduce Plaintiff's fee award or to disallow recovery altogether. Chavez, 47 Cal. 4th at 990 (affirming denial of recovery of fees in FEHA action); Unruh, 32 Cal. 3d at 635.[8]  However, the Court finds this too harsh a sanction in this case.

Accordingly, Plaintiff may recover fees for 1288.64 of the 1610.8 hours Mr. Jaffe claimed.

b.    Daniel Zaheer

UPS complains that Mr. Zaheer block-billed and, accordingly, the hours he claims should be discounted by at least twenty percent. UPS, however, does not identify any entries reflecting block-billing. A review of Mr. Zaheer's time records reveals that they are sufficiently specific to enable a reasonableness determination.

Accordingly, none of Mr. Zaheer's 395.2 hours will be

---

[8] Although Unruh involved a fee request under California Code of Civil Procedure § 1021.5, such cases are instructive in evaluating fee requests under the FEHA. Chavez, 47 Cal. 4th at 985.

1    disallowed based on a lack of reasonableness.

2                    c.    Kathryn Landman

3        UPS does not offer any objections concerning the hours claimed

4    by Ms. Landman, and a review of her time records does not suggest

5    that her hours were not reasonable.  Accordingly, none of Ms.

6    Landman's 28.1 hours will be disallowed based on a lack of

7    reasonableness.

8                    d.    Susan Jaffe

9        Like Mr. Jaffe, Mrs. Jaffe did not keep contemporaneous time

10   records.  Instead, in Plaintiff's initial filing in support of her

11   fees request, she claimed that Mrs. Jaffe worked 465 hours.  In its

12   March 25, 2011 Order, the Court instructed Plaintiff to proffer a

13   reconstruction of Mrs. Jaffe's hours that employs a reliable

14   methodology based on verifiable evidence.

15       Plaintiff has not submitted a declaration by Mrs. Jaffe.

16   Instead, she supports her request for Mrs. Jaffe's fees with the

17   declaration of Mr. Jaffe, who states that he witnessed Mrs. Jaffe

18   reconstruct her hours using the same data sources on which he

19   relied.  He includes with his declaration a spreadsheet showing

20   that Mrs. Jaffe worked 531.6 hours.[9]

21       As it did with Mr. Jaffe, citing specific time entries, UPS

22   complains that Mrs. Jaffe's hours are excessive, duplicative,

23   unnecessary or for non-compensable secretarial work.  The Court

24   finds UPS objections well-taken and disallows twenty percent of

25   Mrs. Jaffe's hours.  Accordingly, Plaintiff may recover fees for

26   ─────────────────

27       [9] UPS objects to this spreadsheet, asserting that it is
     inadmissible hearsay.  However, the spreadsheet does not appear to
28   be a statement made by Mrs. Jaffe, but rather a computation by Mr.
     Jaffe.  Accordingly, UPS's objection is OVERRULED.

1    425.28 of the 531.6 hours Mrs. Jaffe claimed.

2           3.   Lodestar Adjustment

3        Once a lodestar has been determined, courts may apply "a

4    positive or negative 'multiplier' to take into account a variety of

5    other factors." Lealao v. Beneficial Cal., Inc., 82 Cal. App. 4th

6    19, 26 (2000).  To determine whether the lodestar should be

7    adjusted, courts may consider various factors, including "(1) the

8    novelty and difficulty of the questions involved, (2) the skill

9    displayed in presenting them, (3) the extent to which the nature of

10   the litigation precluded other employment by the attorneys, (4) the

11   contingent nature of the fee award," and (5) the results obtained

12   by a plaintiff.  Graham v. DaimlerChrylser Corp., 34 Cal. 4th 553,

13   579, 582 (2004) (quoting Ketchum, 24 Cal. 4th at 1131-32).

14       Plaintiff asserts that she is entitled to a lodestar

15   multiplier of 1.5.  She argues that her case involved novel and

16   difficult questions, her counsel displayed skill in presenting them

17   and her case precluded her attorneys from accepting other work.

18   She also maintains that the contingent nature of her attorneys'

19   fees justifies a multiplier.  However, Plaintiff represents that

20   her case was "relatively straightforward" and "not inherently

21   complex or novel," Pl.'s Mot. for Attorneys' Fees & Costs at 3, 16,

22   which undercuts her request for a multiplier based on novelty and

23   difficulty.  Contrary to Plaintiff's argument, UPS's arguments and

24   litigation positions did not raise novel and difficult questions.

25   Her counsel's presentation of her case at trial does not justify a

26   multiplier.  Plaintiff does not establish that her attorneys were

27   precluded appreciably from accepting other work.  To support this

28   argument, she proffers only Mr. Jaffe's declaration, which states

United States District Court
For the Northern District of California

26

United States District Court
For the Northern District of California

that, during the trial, he was "completely unable to devote any time to any other client, case or other fee generating activities." Jaffe Decl. ¶ 25.  Although this may be true, his eight-day absence does not warrant a multiplier of 1.5 for all fees sought in this case.  Finally, because this case did not involve any complex issues or raise a particular issue of public importance, the contingent nature of the award in this lawsuit does not warrant a multiplier.

Instead, the result Plaintiff obtained warrants a downward adjustment in the lodestar.  Under California law, "the extent of a plaintiff's success is a crucial factor" in determining the size of a fee award.  Chavez, 47 Cal. 4th at 989.  "If a plaintiff has prevailed on some claims but not others, fees are not awarded for time spent litigating claims unrelated to the successful claims, and the trial court 'should award only that amount of fees that is reasonable in relation to the results obtained.'"  Id. (quoting Hensley v. Eckerhart, 461 U.S. 424, 440 (1983)).  However, "fees are not reduced when a plaintiff prevails on only one of several factually related and closely intertwined claims."  Chavez, 47 Cal. 4th at 989 (citing Wysinger v. Automobile Club of S. Cal., 157 Cal. App. 4th 413, 431 (2007)).

Plaintiff makes no substantive arguments linking her claims, insisting only, without citing any allegations, that her "claims were intertwined, if not essentially the same."  Pl.'s Reply in Support of Mot. for Fees & Costs 5:8.  As noted above, Plaintiff prevailed on her gender discrimination claim, obtaining a jury award of $27,280.00.  This claim was factually distinct from her failed retaliation and age discrimination claims.  Her plead and

27

proposed retaliation claims were based on "her complaints of irregularities in defendant's timekeeping records," Pl.'s Mot. to File 1st Am. Compl. 3:2, which she made in October, 2006 and early 2007.  The basis for her age discrimination claim was never before the Court; as noted above, she withdrew the claim in light of UPS's summary judgment motion, and her complaint provided no allegations specifically addressing such discrimination.  Wysinger, a case on which Plaintiff relies, is distinguishable.  There, the court rejected the defendant's argument that the plaintiff's fee award should be reduced because he prevailed on only two of eight causes of action.  157 Cal. App. 4th at 429-30.  The plaintiff's claims were premised on his allegations that the defendant discriminated against him based on his age and disabilities, which he asserted to be lupus, a heart condition and rheumatoid arthritis.  He also sought relief for the defendant's alleged retaliation against him for filing a complaint with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory acts.  Id. at 418-19.  Wysinger's claims were intertwined in that they all related to the defendant's alleged conduct concerning his age and age-related disabilities.  Here, Plaintiff's plead and proposed retaliation claims did not relate to her gender discrimination claim.  She did not claim that she was retaliated against for complaining about gender discrimination.  And, as noted above, her complaint offered no insight into the basis for her age discrimination claim.

Based on Plaintiff's limited success, her fee award will be reduced by ten percent.  She prevailed on only her gender discrimination claim.  Although Plaintiff argued that UPS

28

discriminated against her on three occasions, she succeeded in convincing the jury only with respect to one of them.  Further, she was awarded a minimal amount for her past losses and received nothing for future economic and non-economic losses.  This reduction is further supported by Plaintiff's disproportionate fee request.  Her request for approximately $2 million in fees is roughly seventy-three times her $27,280.00 damages award.  Plaintiff maintains that her fee request is not excessive, pointing to the number of hours billed by UPS's attorneys.  However, there is no evidence that UPS's counsel billed a reasonable number of hours.  Notably, UPS's failed fee request did not seek an award for all the hours its attorneys billed.

Accordingly, Plaintiff does not substantiate a lodestar multiplier of 1.5.  Instead, based on her limited success and inflated fee request, the lodestar will be reduced by ten percent.

> 4.   Non-Statutory Costs

Plaintiff seeks an award of various costs not recoverable under 28 U.S.C. § 1920.

Plaintiff requests $1,225.88 for legal research costs. California courts permit prevailing parties to recover legal research costs as attorneys' fees.  See Local 290 v. Duncan, 157 Cal. App. 4th 1083, 1099 (2007).  Accordingly, Plaintiff may recover $1,225.88 for such costs.

Plaintiff also seeks costs pursuant to California Code of Civil Procedure section 1033.5(c)(4).[10]  In diversity cases, federal

---

[10]  Inexplicably, Plaintiff cites section 1033.5(c)(4) in her opening brief, but then states in her reply that this statute does

(continued...)

courts may award costs pursuant to a state statute, so long as that statute does not conflict with federal law.  <u>Garcia v. Wal-Mart Stores, Inc.</u>, 209 F.3d 1170, 1176-77 (10th Cir. 2000).  Section 1033.5(c)(4) provides that recovery for items not enumerated in that statute "may be allowed or denied in the court's discretion."  However, "[a]llowable costs shall be reasonably necessary to the conduct of the litigation rather than merely convenient or beneficial to its preparation."  Cal. Civ. Proc. Code § 1033.5(c)(2).

Plaintiff seeks $1,533.14 for her counsel's travel costs, $1033.39 of which is attributable to attending the out-of-town deposition of Gerald Mattes.  According to Mr. Jaffe, this deposition took 1.2 hours.  <u>See</u> Jaffe Supp. Decl., Ex. A.  To support this amount, Plaintiff offers only a car rental receipt for $83.39; she does not offer any other documentation to substantiate the remaining $950.00 her counsel spent to attend that deposition.  As a result, the Court cannot determine whether the remaining $950.00 was reasonably necessary for this litigation.  Plaintiff may recover $83.39 for her counsel's rental car.

The remaining travel costs Plaintiff seeks to recover relate to her counsel's "parking at the Court for hearings and the trial and for bridge tolls to travel to and from the courthouse."  Jaffe

---

[10](...continued)
not apply.  <u>Compare</u> Pl.'s Mot. for Attorneys' Fees & Costs 23:14-15 <u>with</u> Pl.'s Reply in Support of Mot. for Attorneys' Fees & Costs 14:27-28.  UPS does not argue that section 1033.5 is inapplicable in this case.  California Government Code section 12965(b), which Plaintiff cites in her reply, does not offer any guidance as to what constitutes reasonable costs.  Thus, the Court relies on section 1033.5 to consider Plaintiff's request for costs under California law.

Decl. ¶ 35.  The Court finds that these costs were reasonably necessary for this litigation and awards Plaintiff $499.75 as a result.  <u>Ladas v. Cal. State Auto. Ass'n</u>, 19 Cal. App. 4th 761, 776 (1993), did not address travel costs to the courthouse and does not require disallowing recovery of these costs.

Finally, Plaintiff requests $9250.00 for mediation that took place before she filed this litigation.  Although voluntary mediation may have been beneficial, its costs were not reasonably necessary to the litigation, which had not even begun.  <u>Gibson v. Bobroff</u>, 49 Cal. App. 4th 1202 (1996), does not warrant a contrary conclusion.  There, mediation was court-ordered.  <u>Id.</u> at 1208.

Accordingly, the Court awards Plaintiff $1,225.88 for legal research costs and $583.14 for her counsel's travel costs, which were not recovered under 28 U.S.C. § 1920.

     5.   Summary

Based on the foregoing reasons, Plaintiff's award for attorneys' fees and non-statutory costs is as follows:

| Attorney | Hourly Rate | Hours | Total Fees |
|---|---|---|---|
| Stephen Jaffe | $445.00 | 1288.64 | $573,444.80 |
| Daniel Zaheer | $350.00 | 395.2 | $138,320.00 |
| Kathryn Landman | $230.00 | 28.1 | $6,463.00 |
| Susan Jaffe | $130.00 | 425.28 | $55,286.40 |
| | | Subtotal | $773,514.20 |
| | Subtotal x Lodestar Reduction of 0.1 | | $696,162.78 |
| | | Non-statutory Costs | $1,809.02 |
| | | Total Award | $697,971.80 |

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

CONCLUSION

For the foregoing reasons, the Court DENIES UPS's renewed motion for judgment as a matter of law (Docket No. 139), GRANTS in part and DENIES in part its motion to amend the judgment (Docket Nos. 148 and 163), DENIES its motion for review of the Clerk's taxation of its costs (Docket No. 174), GRANTS in part and DENIES in part its motion for review of the Clerk's taxation of Plaintiff's costs (Docket No. 248) and DENIES its motion for attorneys' fees (Docket No. 144).  The Court GRANTS in part Plaintiff's motion for attorneys' fees and costs.  (Docket No. 184.)  Plaintiff's motion to strike is denied.  (Docket No. 276.)

The Court awards Plaintiff $697,971.80 for attorneys' fees and non-statutory costs and $11,901.72 for her costs pursuant to 28 U.S.C. § 1920.  UPS shall pay these amounts forthwith.

The Clerk shall amend the judgment so that it reads as follows:

> In this action, Plaintiff Kim Muniz asserted against Defendant United Parcel Service (UPS) claims for (1) gender discrimination in violation of California's Fair Employment and Housing Act (FEHA), (2) retaliation in violation of the FEHA, (3) age discrimination in violation of the FEHA and (4) negligent hiring, training and supervision.  Summary judgment was granted in favor of UPS on Plaintiff's second and third claims. Plaintiff's fourth claim, in the interests of efficiency, was not litigated at trial.
>
> Plaintiff's first claim came on for trial before a jury, the Honorable Claudia Wilken, United States District Judge, presiding, and the issues having been duly tried and the jury having duly rendered its verdict on Plaintiff's gender discrimination claim,
>
> IT IS ORDERED AND ADJUDGED
>
> That Plaintiff Kim Muniz recover from the Defendant United Parcel Service the sum of $27,280.00, with interest thereon as provided by 28 U.S.C. § 1961, and her costs of action.

The Clerk shall amend the judgment forthwith.

    IT IS SO ORDERED.


Dated: 8/23/2011

CLAUDIA WILKEN
United States District Judge

**United States District Court**
For the Northern District of California